No. 22,518.

BERT BURNHAM, *Appellee,* v. CHARLES STITH, *Appellant.*

### SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Safe Place to Work—No Negligence Shown.* The evidence considered, and held insufficient to sustain a judgment against an employer for damages sustained by an employee because of alleged failure to furnish the employee a reasonably safe place in which to work.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed March 6, 1920. Reversed.

*Howard J. Hodgson,* of Eureka, and *O. C. Mosman,* of Kansas City, Mo., for the appellant.

*O. C. Zwicker, S. F. Wicker,* and *Gordon A. Badger,* all of Eureka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one against an employer for damages sustained by an employee as the result of personal injury negligently inflicted. The sole ground of negligence pleaded was that the defendant failed to furnish the plaintiff a reasonably safe place in which to work. The plaintiff recovered, and the defendant appeals.

The plaintiff was a tool dresser at the defendant's oil-drilling rig. The engine house was south of the derrick, and the two structures were connected by a board walk about four feet wide. The belt house was on the west side of the walk. North of the engine house and adjoining the walk on the east was the tool rack. North of the tool rack, but not adjoining it, was the casing rack. There was casing on the rack and lying about it. Drilling operations had been in progress for some time, and as casing was used the rings which

protect the threads of the casing until it is used had been taken off by the casing crew and thrown on the ground. The rings were 10, 12½, and 15 inches in diameter, weighed from 10 to 30 pounds, and were not piled up, but lay scattered about. On the premises were necessary structures other than those mentioned, and the usual litter incident to oil-drilling operations. On the day of the accident, what is called a stem was brought to the premises. The stem was a metal shaft, 4 or 4½ inches in diameter and 30 to 35 feet long, for use in recovering tools lost in the well. The stem was unloaded from a truck and deposited on the ground east of the casing rack. One end was near the engine house, and the other was 25 or 30 feet southeast of the derrick, so that the stem extended in a northeasterly direction from a point near the engine house. A cable from the top of the derrick, which was 60 or 70 feet high, was attached to the end of the stem nearest the derrick, and the stem was lifted and dragged into the derrick by power from the engine. The plaintiff assisted in rolling back some casing not on the casing rack, so that it would not be in the way when the stem was raised. There were casing rings under the rack, in front of it, and under the tool rack, but there were none about the stem where it lay before it was raised. While the cable was being attached to the stem the plaintiff held the stem with chain tongs, taking his position on the west side of the stem, the side toward which it was obliged to swing when moved. As the stem was raised it was dragged toward the north, while at the same time the north end swung toward the west. The chain tongs were not in good condition, they did not release, and the plaintiff, while stepping backward, kicked them loose. The moving stem overtook him, and he jumped toward the west. He alighted on the rim of a ring, which turned up and struck him on the shins.

The plaintiff had had several years' experience working about oil derricks. When he first went to work he learned to dress tools, and he had been acting as a tool dresser for some months previous to his injury. He had worked in the capacity of tool dresser about the rig at which he was injured for 15 or 20 days before the accident, and he was familiar with all the conditions, including the location of the casing rings,

which remained unchanged during the entire time he worked there. When the casing was moved to clear the way for lifting the stem, the casing rings were not disturbed. The plaintiff knew the stem was bound to swing toward him when it commenced to move.

The argument in support of the judgment departs from the case made by the petition and the evidence. It is said the plaintiff was not engaged in the performance of his ordinary duties, but was called on to render an unusual and extraordinary service. The petition pleaded that assisting in handling the stem was part of the work to be done in the course of the plaintiff's employment. At the close of the evidence the petition was amended to conform to the proof in certain respects, but not in regard to the character of the work. In describing the work of a tool dresser the plaintiff specified certain things, and added that it was his duty to "help all he can around the rig that the driller needs him to do." The plaintiff helped the driller attach the cable to the stem preparatory to raising it.

It is said that the plaintiff was injured while working under the immediate direction and supervision of the master himself. This subject was not in mind when the petition was drawn, or when it was amended, or when the jury was instructed. The well had caved, causing loss of some tools. Operations waited on arrival of a stem. The defendant brought the stem, and after it had been unloaded said, "Here's your stem, boys; hook onto it." The driller and the plaintiff had just finished preparing the rope socket to be attached to the stem, and they simply passed to the next thing to be done in regular progress of the work. All orders to a servant are given by the master. In this instance they were usually voiced by the driller, who was the plaintiff's immediate superior. The driller's orders, however, were master's orders, and it was not material that the defendant himself happened to be present on this occasion, and spoke instead of the driller.

It is said the stem was moved suddenly and without warning to the plaintiff, so that he could not loosen the tongs and get away. No such claim was made in either the petition or the testimony. The engine was started and stopped from inside the derrick. On this occasion the engine was started by Sillin.

He was at the stem when the rope socket was attached. The plaintiff testified that after the rope socket was screwed up, Sillin and the driller walked from the stem to the derrick, the driller took the brake, and Sillin opened up the steam. Raising the stem was the next thing to be done after the rope socket was attached.

It is said the rings were not a part of the tools or equipment necessary to drilling the well. Casing was necessary to drilling the well, and the rings were essential portions of the casing up to the time the casing was put into the hole.

The result is, the judgment cannot be upheld by any of the supports proposed by the plaintiff.

It is difficult to discover a fair basis on which to rest a finding that the defendant was negligent. Drilling an oil well is a somewhat rough-and-ready kind of business. The premises are not supposed to be kept swept and garnished. Tools, material and supplies, by-products, worn-out and cast-off articles, and rubbish of all kinds are disposed of according to convenience. As the work progresses things accumulate, and a condition gradually grows up with which experienced workmen are perfectly familiar, and which they recognize as incidental to prosecution of that kind of an enterprise. The defendant's premises appear to have been safe enough for any one not a novice at the business; but whether or not his method of conducting drilling operations was one which a jury might pronounce reasonably safe for his workmen, it was his method. Casing rings were dropped by the casing crew where they were removed, and were left in the vicinity of the casing rack. The plaintiff met this condition when he went to work there. The condition continued unchanged, and he knew all about it. The rings were obvious impediments, if in anybody's way. It was scarcely necessary that the plaintiff should be instructed concerning running against, falling over, stepping on, or jumping on a casing ring or collection of casing rings. He knew just as much about the risk attending such action as the defendant, and he accepted the situation. He assisted in removing casing lying beside the rings, from the anticipated path of the stem. When he went out to the stem, he could foresee just as well as the defendant that if he should be obliged to retreat before the moving stem, the rings would confront him, and whatever risk there was in the work he assumed.

The plaintiff was injured by a combination of fortuitous circumstances, to which the matter of allowing rings to lie about was a mere incident. It so happened that when the stem was brought to the well, it was deposited on the ground in such a position that it would swing toward the west when it was raised. The plaintiff happended to stand on the west side of the stem when holding it with the chain tongs, instead of on the east side, where he would have been perfectly safe. It happened that the tongs unexpectedly stuck, and the engine was started before the plaintiff succeeded in releasing them. Finally the plaintiff made a jump, and his weight happened to be applied with such force on the rim of a ring that it performed in such a way as to injure him. Analyzing this chain of events, it is quite clear the primary and proximate cause of the accident was not the fact that the defendant did not furnish the plaintiff a clear jumping ground, but the fact that the tongs stuck, a matter of which the plaintiff did not complain. Presence of the rings merely created a condition which rendered operation of the cause hurtful.

The principles which have just been applied are all elementary in the law of negligence, and need neither fortification nor illustration by citation of decided cases.

At the conclusion of the plaintiff's evidence a demurrer was interposed and overruled. The judgment is reversed, and the cause is remanded to the district court with direction to sustain the demurrer.