SEBASTIAN CARILLO, *Appellant*, v. THE UNITED STATES CONSTRUCTION AND FINANCE COMPANY, *Appellee*.

No. 16,365.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT — *Injury to Employee — Independent Contractor—Question for the Jury*. In an action for the negligent injury of a workman evidence was introduced tending to show these facts: The defendant, a corporation, was building a factory. The plaintiff was in its employ under one of its foremen engaged in that work. A well outside of the factory had been dug for the company, by independent contractors, whose connection with the matter ended there. The purpose of the well was to test the water supply, in order to determine how many pumps should be installed in the factory, and it was used by the company to furnish water during the construction of the building. A pump belonging to a general officer of the company was installed over this well by some one whose connection with the company is not distinctly shown, but at whose request the foreman referred to brought the plaintiff and other laborers to assist in the work, in the performance of which the accident occurred. *Held*, the evidence was sufficient to justify submitting to the jury the question whether the defendant had control of the work in the course of which the injury was received.

2. ———— *Nondelegable Duty of Master—Negligence of Fellow*

Carillo v. Construction Co.

*Servant.* The obligation of a master to his servants to provide a reasonably safe method for the performance of their work is one of his nondelegable duties, the neglect of which imposes a liability for a resulting injury, irrespective of any question of fellow service.

3. ———— *Same.* Where an employee is injured while assisting in lowering a heavy piece of machinery down an inclined plane, and such injury is due to the negligent act of those in immediate charge of the work in failing to employ some mechanical device to control its movement, instead of undertaking to move it by hand, the employer can not avoid liability upon the ground that the negligence was that of a fellow servant.

4. ———— *Assumption of Risk.* The danger of attempting to lower a heavy piece of machinery down an inclined plane by hand is not so obvious that it can be said as a matter of law that a laborer assisting in the work assumes the risk of injury.

Appeal from Finney district court; WILLIAM H. THOMPSON, judge. Opinion filed February 12, 1910. Reversed.

*Milton Brown,* for the appellant.

*A. L. Berger, J. G. Dickinson,* and *Hoskinson & Hoskinson,* for the appellee.

The opinion of the court was delivered by

MASON, J.: Sebastian Carillo, while in the employ of the United States Construction and Finance Company, was engaged in helping to place a heavy pump in an excavation over a well. The pump was being lowered on a low-wheeled wagon, or truck, along an inclined surface, into its position, when in some way the workmen handling it lost control and it broke loose and plunged to the bottom of the excavation, catching and injuring Carillo. He sued the company for damages, alleging that his injury was due to its negligence. The court sustained a demurrer to his evidence and he appeals.

Evidence was introduced tending to show these facts: The company was constructing a sugar factory. The

well in question had been put down by Leonard & Schulman under contract with the company. It was located outside of the factory and its purpose was to test the extent of the water supply, this information being needed in order to determine the number of pumps to be installed in the factory. It also supplied water for use in the construction of the building. Leonard & Schulman had nothing to do with furnishing the pump or placing it in position. The pump belonged to J. R. McKinnie, a director and the treasurer of the company. Carillo was working under John Releford, a foreman of the company, who had charge of a number of laborers engaged in making excavations and putting down concrete in connection with the building of the factory, and a part of whose employment was to help unload and install its machinery if called upon. Two men, whose names appear to have been Goodrich and Thompson, started to put the pump in position in an excavation about five feet deep, and called for assistance on Releford and his workmen, who responded. Releford did not know these two men, but understood that they were employees of the company. Among them they decided that they had help enough to let the pump down by hand along an incline that had been dug to the bottom of the excavation, and attempted to do so. The accident then occurred, and Carillo was hurt while acting under the direction of Releford.

The company contends that there was an entire lack of evidence to show that the work of installing the pump was being done by its employees acting in its behalf; that there was nothing to show that Goodrich and Thompson were employed by the company, or that Releford in undertaking to help them was acting within the scope of his employment. We think otherwise. The evidence sufficiently showed that the work was being done for the benefit of the company, in part at least by its employees. The inference was justifiable that the company had caused the work to be done, either under

its own control or through independent contractors, and there was no evidence that conclusively established the latter hypothesis. The superintendent in charge of the building of the factory at the time and the general superintendent of the company each testified that the company had nothing to do with the putting in of the pump, but of course the plaintiff was not absolutely bound by their statements, although he called them as witnesses. (*Acker v. Norman,* 72 Kan. 586.) They professed ignorance as to who did have charge of the placing of the pump, but seemed to think it was Leonard & Schulman, one of whom stated upon the stand that the firm had no connection with the matter beyond sinking the well. Explicit evidence of the relation of Goodrich and Thompson to the company was lacking. Releford, the foreman, deposed that they were employed by the company to help let down the pump, but on cross-examination qualified this by adding that while he thought they were in the employ of the company he did not know this to be a fact. The real defense of the company on this branch of the case, as foreshadowed by the testimony of witnesses connected with it, seems not to have been that Goodrich and Thompson were themselves independent contractors, but that they acted by the procurement of Leonard & Schulman, who were. This defense was not established as a matter of law, but presented an issue of fact for the determination of the jury. Notwithstanding the evidence was vague and in some respects contradictory, it justified submitting to the jury the question whether the company was in control of the work at which the plaintiff received his injury.

A further contention in support of the ruling of the trial court is that, assuming Carillo's injury to have been received while acting within the scope of his employment by the company, he can not recover because the negligence complained of was that of a fellow servant. One of the forms of negligence alleged in the pe-

Carillo v. Construction Co.

tition was "the use of insufficient appliances and help to restrain said car and pump from running too fast." Under this allegation and the evidence it was a fair matter for the consideration of the jury whether the accident was not due to negligence in undertaking to let the pump down into the hole by hand—without the use of a derrick, block and tackle or other mechanical device to insure its safe handling. If negligence existed in this respect it was negligence in the general method of doing the work, not in a mere detail of its performance. The master's obligation to his servant to provide a safe method of work is one of his nondelegable duties, the neglect of which imposes a liability for any resulting injury, irrespective of any question of fellow service. While there is some conflict in the decisions elsewhere (26 Cyc. 1154), such is the settled law of this state. (*Brick Co. v. Shanks,* 69 Kan. 306; *Brice-Nash v. Salt Co.,* 79 Kan. 110.)

A final contention is that the plaintiff's recovery must be denied upon the principle of assumption of risk. The evidence did not conclusively show that Carillo knew it was dangerous to attempt to handle the pump without the use of mechanism, and knowledge of that fact is not imputable to him as a matter of law. (*King v. King,* 79 Kan. 584.)

The judgment is reversed and the cause remanded for further proceedings.