W. T. YOUNG, *a Minor, etc., Appellee,* v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant.*

No. 16,499.

SYLLABUS BY THE COURT.

1. PLEADINGS—*Surplusage—Notice of Injury by Fellow Servant —Nondelegable Duty of the Master.* An allegation in a petition that notice of an injury had been given as required by the fellow servant act (Laws 1907, ch. 281, § 1; Gen. Stat. 1909, § 6999) will be treated as surplusage where the negligence claimed is that of the master failing to exercise proper care in furnishing to the servant a safe place in which to work.

2. ———— *Allegations of Negligence—Definiteness.* The allegations of negligence by which it is claimed that a laborer in a coal mine was injured are examined and found to be sufficiently definite.

3. PERSONAL INJURIES—*Assumption of Risk—Contributory Negligence.* Where the evidence tends to prove that a laborer in a coal mine had become aware of the presence of gas in the room in a mine where he had been directed to work, and made complaint about it, and was then directed to proceed with his work in the same room and was there injured by an explosion of gas, an instruction following the rule given in the second paragraph of the syllabus in *Wurtenberger v. Railway Co.,* 68 Kan. 642, is not erroneous.

4. ———— *Same.* Whether in such a situation the servant, in the exercise of reasonable care for his own safety, knew or ought to have known of the impending danger, and whether it was so obvious that a person of ordinary prudence would not have incurred the risk, were questions for the jury, and there was no error in overruling a demurrer to the evidence.

Appeal from Cherokee district court; CORB A. MC-NEILL, judge. Opinion filed April 9, 1910. Affirmed.

*John Madden, W. W. Brown,* and *L. B. Kellogg,* for the appellant.

*W. H. Lucas,* and *J. N. Dunbar,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: This action was brought to recover damages for personal injuries suffered by the plaintiff, Young, while at work mining coal for the defendant company. The negligence charged was the failure to provide proper airways, break-throughs or other necessary means of ventilation, whereby gas was suffered to accumulate in the mine, causing an explosion by which the plaintiff was injured. The plaintiff had worked for the defendant three weeks before the injury, had had three months' previous experience as a coal miner, and was nineteen years of age.

A main entry in the defendant's mine extends north from the shaft. Entries extend to the east from this main entry. From the sixth east entry other entries extend to the north. Three rooms are to the east of the third north entry. No. 1 of these rooms is the one next to the sixth east entry, No. 2 is next north of No. 1, and No. 3 is next north of No. 2. The plaintiff's room was No. 2, and was turned off from No. 3. It did not open into the entry. A track to carry out the coal was laid from the entry into room No. 3, and thence into room No. 2. About two weeks before the explosion the plaintiff told the pit boss that he must have air; that there was no air, and it was a bad place

to work. The pit boss directed him to "go ahead and break it through to Sawyer's," and said: "That place has got to go, and I have n't any other place for you." Sawyer's room was No. 1. The plaintiff had noticed gas in the room, which caused him to make the complaint. He continued his work, and the night before he was injured had put in a shot behind a horseback in his room. The next morning he found that the shot had let down the coal, filling up the hole through the horseback. He proceeded to load the coal into cars upon the track. His uncle, who had been mining in room No. 3, came in and assisted him. Both of them put down their lights from eleven to fifteen feet from the place where they were working, because of gas in the room. While the plaintiff was resting, his uncle in loading coal thrust his shovel through the coal in the opening in the horseback, and thereupon the explosion followed by which the plaintiff was injured.

Four days before the accident the foreman had stopped work in room No. 3 because of lack of air, and requested the plaintiff's uncle, who had been working there, to take the plaintiff's place, which he declined to do. The boss then told him "to gouge around . . . for a day or two," when there would be a place for him. While thus waiting he went in to help the plaintiff, as stated. Unprotected oil lamps were used. The place of the explosion was about forty-five to fifty feet from the entry. There was no other way to supply air, except through room No. 3, the break-through not having been made.

The petition contained an allegation that notice had been given to the company as required by the fellow servant act. A motion to make the petition more definite was overruled, and upon this ruling error is assigned. The allegation with respect to notice, which the defendant argued was indefinite, must be treated as surplusage. The negligence alleged is that of the company. The duty to exercise proper care to furnish

a safe place in which to work is one that can only be satisfied with performance. One of the dangers to be guarded against in mining coal is the accumulation of noxious and explosive gases, and the mine owner is required to provide and maintain ample means of ventilation. (*Schmalstieg v. Coal Co.*, 65 Kan. 753.)

The defendant contends that the petition was also indefinite because the specific acts of negligence were not stated. In addition to the general averment of neglect to provide proper ventilation, airways and break-throughs, it was alleged that the mine was not kept free from noxious standing gas, but that it was continually allowed to accumulate therein, that it was not diluted or made harmless, and that no examination had been made by an examiner or fire boss. The petition was sufficient to show the nature of the plaintiff's claim, and the cause and manner of his injury. (Civ. Code, § 122; Gen. Stat. 1901, § 4556.)

The argument that the name of the officer or agent who had directed the plaintiff to work in the particular place should have been stated is without merit. It was a matter especially within the defendant's knowledge, and it could not have been surprised by evidence that the pit boss or mining boss was the person who had given such directions, for it was within the scope of his duties. He was in the immediate charge of the place.

Complaint is made of the giving of the following instruction:

"Where a master instructs or orders a servant into a situation of danger, and while obeying such order he receives an injury, he will not be held to contributory negligence or with having assumed the risk incident to such work unless the danger was so glaring that a prudent person would not have entered upon it even though ordered by one having authority to order him, and the question as to whether the danger in such an instance was glaring, and so glaring that no prudent man would have encountered it, is a fact to be determined by you by the evidence in this case, the same as any other question of fact."

It is insisted that the facts did not warrant this instruction because there was no promise to correct the defective conditions. The plaintiff was, however, directed to go ahead and break through to the adjoining room, and was working to that end when he was hurt. It must be presumed that the pit boss could estimate the time necessary to comply with his orders, and the failure to give any other directions was equivalent to continuing the order for a reasonable time, or until the object should be accomplished in the usual progress of the work. The instruction is supported by the opinion in *Wurtenberger v. Railway Co.*, 68 Kan. 642, followed in *Railroad Co. v. Norris*, 76 Kan. 836, and was applicable to a phase of the case presented by the evidence.

It is contended that by continuing at work with knowledge of the presence of noxious gases the plaintiff assumed the risk, notwithstanding the order to proceed, and that a demurrer to the evidence should have been sustained for that reason. A servant does not assume the risk of latent or obscure dangers, such as he would not discover by the exercise of ordinary care, having reference to his situation, and such as the master ought to dscover by proper inspection. (4 Thomp. Com. Law of Neg. § 4641.) In order to devolve upon the servant the assumption of risk he must not only know of the defect but must also know of and appreciate the danger arising therefrom. (4 Thomp. Com. Law of Neg. § 4652; case note, 87 Am. St. Rep. 557, 583, *e*; *King v. King*, 79 Kan. 584; *Choctaw, Oklahoma & Gulf Rd. Co. v. Jones*, 77 Ark. 367, 4 L. R. A., n. s., 837, and case note.) It has been held, however, that if the danger is so obvious as to be apparent to a person of ordinary intelligence the law will charge the servant with knowledge of the danger. (*Christiansen v. Garver Tank Works*, 223 Ill. 142.) Whether the plaintiff in the exercise of proper care for his own safety knew or ought to have known of the impending danger, and whether it was so obvious that a person of ordinary prudence

would not have incurred the risk, were questions properly submitted to the jury. (Case note, 48 L. R. A. 753, 758.)

"It would be a very unjust rule which would allow a master to shield himself from responsibility for the consequences of his own negligence by alleging those acts, not inevitably or imminently dangerous, to have been negligent which his servant performed by his express orders." (*Hawley v. Northern Central Railway Co.*, 82 N. Y. 370, 373.)

It is also argued that the plaintiff was guilty of contributory negligence, but this, too, was a question for the jury. It is true he knew that there was gas in his room, but it was for the jury to determine whether he apprehended or ought to have apprehended disaster therefrom, and whether he exercised due care in the circumstances in which he was placed. The evidence was sufficient to sustain the finding that the company had failed to exercise proper care to make the place safe, and had neglected to provide for ventilation and to make inspection, as required by the statute. (Gen. Stat. 1909, ch. 79; 26 Cyc. 1203; case note, 87 Am. St. Rep. 557.) The beneficent objects which the statute was designed to secure are stated in *Schmalstieg v. Coal Co.*, 65 Kan. 753, where it was held that the act provides additional safeguards for the laborer, and does not take away from him any protection given by the common law.

The case was fairly submitted to the jury, and the verdict is supported by competent evidence. No error is shown, and the judgment is affirmed.