Bowers v. Mildren.

---

No. 22,565.

L. H. BOWERS, *Appellee,* v. C. R. MILDREN, *Appellant.*

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT — *Personal Injuries — Contributory Negligence Question for Jury.* In an action for damages, the question whether the injured plaintiff was guilty of contributory negligence is ordinarily one to be determined by the jury in view of all the evidence, and cannot be disposed of by a demurrer.

2. SAME—*Assumption of Risk Question for Jury.* Under the evidence in this case the question of assumption of risk was properly submitted to the jury.

3. SAME—*Trial—Rulings Upon Evidence Not Prejudicial Error.* Certain rulings of the trial court in striking out testimony and in restricting the examination of a witness examined, and held not to amount to prejudicial error.

4. SAME—*Instructions Not Erroneous.* Error assigned on two instructions examined and not sustained.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed November 6, 1920. Affirmed.

*Claud J. Bryant,* and *Charles D. Shukers,* both of Independence, for the appellant.

*Thomas E. Wagstaff, Donald W. Stewart,* both of Independence, and *Roy T. Osborn,* of Chicago, Ill., for the appellee.

The opinion of the court was delivered by

DAWSON, J.:   This is an action for damages by an employee against his employer because of injuries sustained through the breaking of a rope on a drilling rig.

The defendant owned a rig for drilling oil wells.  He had a foreman in charge of its operations.  The plaintiff was employed as a "tool dresser" around and about the machine.  Part of the equipment of the machine was a "temper screw" which was hoisted by means of a rope and pulley.  At one end of the rope was an iron block which aided in balancing the weight of the screw.  When the screw was to be hoisted it was the work of the plaintiff to climb on a post and platform and then add his weight to that of the iron block.  In doing this one day the rope broke, causing the plaintiff and the iron block to fall, and the iron fell on his hand and severely injured it.

Plaintiff sued for damages, reciting at length all the pertinent facts, and alleged—

"Defendant, instead of equipping said drilling machine with a wire line or cable to operate said weight with said temper screw, operated said temper screw and iron weight as hereinbefore mentioned and described with a worn, old and rotten rope insufficient in size and strength, and the same had been used by defendant on said drilling rig for a long time— just how long plaintiff does not know—and said defendant knew or with due diligence and inspection of said rope might have known the same was worn, old and rotten and insufficient and impracticable for the use that it was employed and knew or with due diligence, which he failed to exercise, and inspection, which he failed to make, might have known that said rope would break between said weight and temper screw and that said weight would fall to the wooden platform beneath the same if said rope did break, all as hereinbefore mentioned and described; and that said rope did break on account of its size and condition being insufficient and defective, as hereinbefore alleged, as said rope was not strong enough for the purpose for which it was used."

The defense was a general denial, assumption of risk, accident, and the plaintiff's own negligence.

Special questions were answered by the jury:

"1. State the period of time the plaintiff has been engaged in the occupation of a tool dresser, prior to the injury.  Answer: About six years.

"2. Was the plaintiff, at the time of the injury, an experienced tool dresser?  Answer: Yes.

"3. If you find for the plaintiff, then state in what respect the defendant was negligent? Answer: Did not use proper rope.

"4. Did the plaintiff know, or in the use of ordinary care, should have known, the risks and dangers which he would normally and necessarily incur when he would climb up on the Samson post, catch the rope above the iron weight and throw the weight of his body against the rope to raise the temper screw? Answer: No.

"5. State if it is not a fact that the plaintiff knew about the insufficiency of the weight rope prior to his injury. Answer: No.

"6. Do you find that the rope used by defendant on temper screw and iron weight was insufficient in size and strength for the purpose used, as charged in plaintiff's petition? Answer: Yes.

"7. If you answer question 6 in the affirmative, then state if its condition was obvious and plain to be seen. Answer: No.

"8. If you answer question 7 in the negative, then state if the respect in which the rope was deficient was not discoverable on examination of it. Answer: No evidence to show the rope was examined."

Verdict and judgment for $1,250 were rendered for plaintiff.

Defendant assigns various errors, the first being the overruling of his demurrer to the evidence. While the evidence tended to support the material allegations of the petition, the defendant urges that the plaintiff was guilty of contributory negligence, and also that he assumed the risk incident to his employment. Granting that there may have been some evidence tending to show the plaintiff's negligence, that would not justify the termination of this lawsuit on a demurrer. The matter of plaintiff's contributory negligence was a jury question. (*Delaware &c. Railroad v. Converse,* 139 U. S. 469.) Every disputed *issue of fact* in a common-law action between private individuals (*Reihl v. Likowski,* 33 Kan. 515, 520, 6 Pac. 886) is a jury question, unless a jury is waived. (*K. P. Rly. Co. v. Brady,* 17 Kan. 380; *K. C. Ft. S. & G. Rld. Co. v. Owen,* 25 Kan. 419.)

In *K. P. Rly. Co. v. Pointer,* 14 Kan. 37, 53, it was said:

"It is earnestly insisted by counsel, that the facts in reference to the conduct of the plaintiff (defendant in error), as they appear from the other findings, as well as from the testimony, show that culpable negligence on his part which will relieve the company from responsibility. It seems to us matter of great doubt, as we read the conduct of the plaintiff, as narrated either in the findings or the testimony, whether this claim of counsel is not correct, and whether plaintiff was not so negligent as not to be entitled to compensation. And perhaps this doubt is our best justification for upholding the verdict. This question of negligence is said to be a mixed question of law and fact. When the facts are disputed, it

Bowers v. Mildren.

makes a question for the jury. When the facts are undisputed, and but one deduction is to be drawn from them, there is simply a question of law for the court. But where the facts, though undisputed, are such that when taken singly or in combination different minds will come to different conclusions as to the reasonableness and care of the party's conduct, the question is one which may properly be left to the determination of the jury."

The question of the assumption of risk, under the evidence, was also a question for the jury. There was nothing in the evidence to take this question out of the usual rule. It cannot be said that the hazard was so great that a prudent man would have hesitated to swing his weight on the rope, as the plaintiff did when he was injured; he had been doing that frequently for many days before his injury. "Drilling an oil well is a somewhat rough-and-ready kind of business." (*Burnham v. Stith,* 106 Kan. 461, 464, 188 Pac. 246.) Whether before his injury he noticed the defective character of the rope was a subject of sharp controversy, but certainly it was for the jury, not the court, to determine the question of fact involved in that controversy. (*Whetzell v. Railway Co.,* 105 Kan. 289, and citations, 182 Pac. 409.) Nor can it be said that it was the duty of the plaintiff to inspect the rope. The defect was not obvious, as in *Barnes v. Akins,* 101 Kan. 359, and cases cited, 166 Pac. 474 (finding No. 7), and therefore the plaintiff might confidently rely upon his employer and the foreman to furnish a proper and sufficient rope, and that it would be replaced before it was so much worn as to be dangerous to use.

The demurrer to the plaintiff's evidence was properly overruled.

Error is also assigned on the rulings of the trial court touching certain evidence stricken out and in restricting the examination of a witness. It was of important and perhaps controlling significance in this case to determine whether the plaintiff knew before he was injured that the rope was defective. While the foreman was on the stand as a witness for the plaintiff, on direct examination he testified:

"Worked for defendant on well in Douglas county, in 1917, as a driller. Mr. Bowers [plaintiff] was my tool dresser. . . ., Think the rope was about five-eighths. Might have been three-fourths. Do not know where it came from. It was with the tools when I went there. It had been used. . . . I had called Mr. Mildren's attention to the insufficiency of the rope some time before."

On cross-examination, the same witness testified:

"It was an old rig. Seen quite a bit of service. Some parts of it worked good and some didn't. . . .

"Q. When was it you talked to Mildren about the insufficiency of this rope? A. Well sir, I don't just remember that.

"Q. Was it a week or two weeks before? A. I couldn't say. I don't think it was. . . .

"Q. How do you know that you talked to him about it? A. Well sir, as near as I can remember it I believe he helped me hitch on one day when Mr. Bowers was out at the boiler. And I think he was going to pull the screw up and I told him to be careful, watch the rope, it wasn't safe.

"Q. Did you ever tell Bowers that? A. I don't know whether I did or not. . . .

"Q. Now isn't it a fact, Mr. Huggins, that Mr. Bowers talked to you about the insufficiency of this rope the day before he was injured? A. Yes. We both spoke about it beforehand.

"To which plaintiff objects as not cross-examination.

"Objection sustained. . . .

"Plaintiff moves to have the answer stricken out.

"Motion sustained."

The foreman was then called as a witness for the defendant and questioned:

"Q. Mr. Huggins, now you may state whether or not you had any conversation with the plaintiff on the day prior to his injury in regard to the insufficiency of this rope?

"To which plaintiff objects as leading and suggestive.

"Objection sustained. . . .

"Q. Did you have any conversation about this rope on the day prior to the injury. . . . A. I don't just remember whether I did or not.

"Q. Well did you have it prior to the injury? A. It seems to me there was something said, but I don't remember whether it was in reference to the rope.

"Q. I'll ask you if you didn't talk about this rope being insufficient?

"To which plaintiff objects as leading and suggestive.

"Objection sustained. . . .

"Mr. Bryant: Now if the court please, this is an unwilling witness.

"Mr. Wagstaff: I object to the statement of counsel.

"The Court: Objection sustained.

"Q. What was said, Mr. Huggins?

"To which plaintiff objects as assuming a proposition not in proof, and because the witness' said he couldn't say.

"The Court: You may state what was said by either he or Mr. Bowers about this rope at any time before the injury, if you remember it. Anything that was said about it. A. Don't remember just what was said.

"Mr. Wagstaff: His answer was, if your honor please, he didn't re-

Bowers v. Mildren.

member that anything was said. Now he asks him to state approximately what was said. Assuming that something was said.

"Q. Just state in substance what was said.

"Mr. Wagstaff: Same objection.

"The Court: Sustained. He says he don't know whether he remembers whether anything was said at all or not.

"Mr. Bryant: Well he does, if the court please, he does say he remembers something was said.

"The Court: Objection sustained. . . ..

"Q. Now I'll ask you to state if you and Mr. Bowers didn't talk about this rope sometime before he was injured.

"Mr. Wagstaff: To which plaintiff objects as leading and suggestive, and having been gone over, and calling for a conclusion of the witness.

"The Court: Sustained. . . .

"Mr. Bryant: [Counsel for defendant.] I want to go back to that question I asked on cross-examination and was stricken out. I'd like to have the reporter refer to it.

"The Court: That's passed. What do you want to go back to that for? To refresh your memory about something?

"Mr. Bryant: I want to offer it—my interrogatory and his answer—at this time. I want to offer that as evidence for the defendant.

"Mr. Wagstaff: I submit it's incompetent.

"The Court: Objection sustained."

This court is agreed that these questions were competent and that the trial court would better have permitted the defendant to examine this witness more thoroughly. The witness had testified that he and the plaintiff had both spoken of the insufficiency of the rope the day before the plaintiff was injured. His testimony was stricken out on the ground that it was not proper cross-examination. Then it was ruled out when the defendant adopted the witness as his own and sought to develop the same fact on direct examination. The court did err, whether prejudicially or not, when it ruled—

"That's passed. What do you want to go back to that for? To refresh your recollection about something? . . . Objection sustained."

The only possible objection to that bit of evidence when it was first given was that it was not proper cross-examination, and it was not strictly error to rule it out at that time and for that reason; but to rule it out as direct evidence for no better reason than that it had once been stricken out because it was not cross-examination, was illogical. However, a majority of the court do not believe that these rulings of the trial court were prejudicial, because elsewhere it ruled:

"The Court: Well, if time and place is given, and a certain foundation, that can be done, but you have to make certain foundation for such a question as that.

"Q. Then I'll ask you, Mr. Huggins, to refresh your memory, if you didn't come to my office in the city of Independence on or about—Oh, some time about in the latter part of March or fore part of April, and there, in conversation with Mr. Mildren and myself, if you didn't state to Mr. Mildren and myself that you and Mr. Bowers, or Mr. Bowers and you, had talked about the insufficiency of this rope on the day prior to his injury?

"Mr. Wagstaff: To which plaintiff objects as hearsay and incompetent.

"The Court: Overruled. You may answer. . . .

"Q. Now Mr. Huggins, I'll ask you to state—I'll ask you whether or not Mr. Bowers ever said anything to you prior to his injury, concerning the insufficiency of this rope?

"To which plaintiff objects as calling for a conclusion of the witness, and incompetent, and having been gone over.

"Objection overruled. . . .

"A. I don't just remember what was said in reference to it.

"Q. How is that? A. I don't just remember what was said in reference to it.

"Q. Repeat the question.

"To which plaintiff objects as having been gone over.

"Objection sustained. . . .

"Mr. Bryant: Repeat the question. He hasn't answered my question.

"Mr. Wagstaff: Object to it.

"The Court: He says he don't remember what was said.

"Q. I repeat that question. You may answer that yes or no.

"Mr. Wagstaff: Object to that as having been answered.

"The Court: I think he's answered it. Says he don't remember what was said. Objection sustained. You're leading your witness. Asking if anything was said about the rope. But you're leading the witness and asking him to say positively that something was said about the sufficiency of the rope, and he says he don't remember what was said. . . .

"Q. I'll ask you to state whether you ever had any conversation with Mr. Bowers prior to this injury concerning this rope? .

"To which plaintiff objects as having been gone over.

"Objection overruled. . . .

"A. Yes, I think we said something about being too small.

"Mr. Wagstaff: Move to strike out. He says he thinks.

"The Court: Overruled. . . .

"Q. When was that, Mr. Huggins? A. I couldn't say. It's been so long. I don't just remember.

"Q. It was before you quit work; was it? A. Yes, sir.

"Q. And he quit work when he got hurt? A. Yes, sir.

"Q. And he said the rope was too small? A. I don't know. There was something said."

Bowers v. Mildren.

Whether the witness spoke inadvertently when he first testified that he and the plaintiff had discussed the insufficiency of the rope, or was trying to evade or conceal the fact of such discussion in his later examination, could better be determined by the trial court and jury than by us, and since the witness was repeatedly given an opportunity to state what the conversation was and repeatedly said he did not remember, this incident cannot be given so much significance as to disturb the judgment.

The next error assigned relates to the remarks of the trial court in the examination of the witness as set forth above and in similar colloquies between court and counsel as the trial progressed:

"Q. Was there a wire line with this outfit.  A.  There was a wire line right there—

"To which plaintiff objects as wholly immaterial.

"Mr. Bryant: The plaintiff charges, if the court please, that we failed to provide a wire line.

"The Court: You did.  Through your foreman, Mr. Huggins.

"Mr. Bryant: And what we aim to show by this is that that wire line was on the job all the time.

"The Court: It would have been all right if Mr. Huggins had been injured.    Then Mr. Huggins couldn't claim, because they furnished Mr. Huggins the wire line.    But Mr. Huggins never furnished Mr. Bowers—

"Mr. Bryant: There's no evidence here as to who furnished it. What we aim to show now is that it was furnished with the outfit, and he could go and get it if he wanted to.

"The Court: I'll permit you to do that if you will show the tool dresser is the foreman over the driller.    But under the evidence so far the driller is a foreman over the tool dresser, and he testified he was superintendent in the absence of the master or general contractor.    If you can show that isn't true I'll permit you to do it.  .  .  .

"Mr. Bryant: Inasmuch as plaintiff has made his opening argument and defendant has waived argument, he now objects to further argument on behalf of plaintiff.

"The Court: I have never called for further argument by the defendant yet.  Don't you know how you can waive it unless I call for it."

It is urged that those remarks, being made in the presence of the jury in a "testy manner," were prejudicial.    In cold type we can see nothing material in the trial court's remarks which would prejudicially affect the case before the jury.    And the "manner" of the trial court is something which the record

does not disclose.  It is altogether *aliunde* the record, although counsel for the appellee, also *aliunde* the record, says there was something of fact in it.  His brief says:

"It is perhaps true, as counsel suggests, that the court lost patience with him, but it seems unreasonable that an attorney can wear out the patience of the court by such procedure and then complain of the results of his course of action.  As far as prejudicing the jury is concerned we submit that counsel's leading and suggestive questions and his frequent assumptions of fact were more apt to prejudice the jury than the attitude of the court."

A petulant or caustic attitude on the part of the trial court, if the record disclosed such attitude, would only be serious if it were shown that it affected the jury and if we had some misgiving about the justice of the judgment rendered in the case.  (Civ. Code, § 581, Gen. Stat. 1915, § 7485.)  Nothing of that kind is discernible here.

Two instructions (Nos. 8 and 16) given to the jury are criticized.  The first of these was a correct statement of pertinent law.  In the second it was said that if the evidence showed that the defendant knew, or by due diligence might have known, that the rope "was worn, old and rotten or insufficient or impracticable," etc., and that the plaintiff used ordinary care and prudence in its use, then the defendant would be liable.  It is urged that there was no evidence that the rope was defective in any of these particulars.  We hold otherwise.  There was no direct evidence that the rope was "rotten," but otherwise there was some evidence to support all these alleged defects, and since the rope had adequately served for a time, and then broke, the jury could properly infer that the defects were substantially as characterized. (*Rickel v. Railway Co.*, 104 Kan. 453, 457, 458, 179 Pac. 550.)

The judgment is affirmed.

DAWSON, J. (dissenting) :  I think the examination of the foreman was unduly restricted, and I am not satisfied that the defendant had a fair trial.  This leads me to a serious doubt about the justice of the net result, and I am therefore compelled to dissent.

PORTER, J. :  I concur in the dissent.