No. 24,543.

O. R. SPEAR, *Appellee*, v. THE CITY OF WICHITA, *Appellant*.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Cities Must Furnish Their Employees a Safe Place to Work*. Municipalities, as employers, are, ordinarily, under the same obligation as other employers to furnish their employees a safe place to work, and under similar conditions are likewise responsible in damages to an employee who is injured by the negligent failure to perform such duty.

2. SAME—*Statute Creating Board of Park Commissioners—Liability of City to Its Employees*. Chapter 101 of the Laws of 1921, providing for the creation of a board of park commissioners in certain cities, does not relieve a city of liability to its employees for injuries sustained through the negligent failure of the city to provide a safe place to work.

3. SAME—*Employee Acting Under Orders from the Master—Liability of Employer*. Where a master orders a servant into a situation of danger, and in obeying the command, the servant is injured, he will not be charged with

contributory negligence or with an assumption of the risk, unless the danger was so glaring that no prudent man would have encountered it, even under such orders, provided he act with reasonable prudence in executing such orders. Following *Railroad Co. v. Morris*, 76 Kan. 836, 93 Pac. 153.

4. SAME—*Contributory Negligence—Question for Jury.* In an action for damages, the question whether the injured plaintiff was guilty of contributory negligence is, ordinarily, one to be determined by the jury in view of all the evidence. Following *Bowers v. Mildren*, 107 Kan. 584, 193 Pac. 318.

5. SAME—*Evidence—Findings—Verdict.* The evidence examined, and found sufficient to sustain the special findings and general verdict of the jury.

Appeal from Sedgwick district court, division No. 1. THOMAS E. ELCOCK, judge. Opinion filed June 9, 1923. Affirmed.

*Robert C. Foulston,* and *George Siefkin,* both of Wichita, for the appellant. *John W. Adams,* and *William J. Wertz,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant appeals from a judgment of $500 recovered by plaintiff for injuries sustained while working in one of defendant's parks. The plaintiff was a workman employed in grubbing out and cutting up large trees. He and another workman were sawing a large limb when it unexpectedly fell on his leg causing the injury.

The contentions of defendant are:

1. That the action, if any, should be against the board of park commissioners and not against the city of Wichita.

2. That judgment should have been rendered for the defendant.

1. The defendant asserts that chapter 101 of the Laws of 1921 revived the board of park commissioners as a separate governmental entity, and therefore, that if there was any liability to plaintiff for the alleged injury, it was a liability of the board of park commissioners and not of the defendant city. Section 3, chapter 101 of the Laws of 1921, provides that:

"When a board of park commissioners, as provided herein, shall have been created and the appointees thereof shall have qualified in the manner provided by law, such board of park commissioners shall be vested with all of the powers, authority and control heretofore vested in the mayor and council or board of commissioners, or the board of park commissioners of such city, so far as the same relates to parks, parkways and boulevards, and such board of park commissioners shall have every power, authority and control over the parks, parkways and boulevards as is or may hereafter be vested in a board of park commissioners, board of commissioners, or other body by whatever name called, except that all bonds required or authorized by law to

br issued relating to parks, parkways and boulevards and all taxes levied for the maintenance or improvement thereof, shall be issued and levied by the mayor and council or board of commissioners, as the case may be."

The defendant argues that:

"This statute creates an entity known as the board of park commissioners as separately and distinctly as did the 'Kansas City Park Act' with all of the powers conferred by said act, and drew to itself every other applicable former legislation relating to parks. A résumé of the 'Kansas City Park Act' shows clearly that the city, as an entity, has no control over the affairs of the public parks. The city of Wichita, as a municipality, could neither have employed appellant nor discharged him."

We do not concur in defendant's view. The so-called "Kansas City Park Act" authorized the park commissioners, among other things, to levy taxes. The act of 1921 contains no such provision. It provides, "That all bonds required or authorized by law to be issued relating to parks, parkways and boulevards, and all taxes levied for the maintenance or improvements thereof, shall be issued and levied by the mayor and council or board of commissioners, as the case may be." It also provides that members of the park board are responsible to and may be removed by the mayor and commissioners of the city at any time. Also, that the park board shall be responsible to the mayor and commissioners for their acts. Under the old act it was provided that, "The board of park commissioners shall be public officers of the city and shall have power for and in the name of the city to prosecute and defend suits." No such power is given in the statute of 1921.

Defendant also argues that the park board bears the same relation to the city as the school board, and is, therefore, a separate entity. We do not regard the reasoning good. There may be a resemblance in certain respects, but not in so far as their responsibilities and duties are concerned. The school board is ordinarily answerable to those who elected them. The park board is answerable to the city commissioners who appointed them. In a sense the latter may be regarded as agents of the city. The school district may, and frequently does, extend beyond the limits of the city. There is, however, a substantial resemblance between the park board and the city fire department. The members of both are appointed by the mayor and council. The provisions for government of the park board and fire department are, in many respects, similar.

The defendant also contends that:

"If, by any manner of reasoning, it can be said that the city of Wichita,

as a separate entity, was maintaining the park, appellee cannot recover herein, for the maintenance of the park was a governmental function and injuries received therein give no right of action against the city."

The case of *Hibbard v. City of Wichita*, 98 Kan. 498, 159 Pac. 399, is cited in support of this contention. The defendant fails to distinguish between the acts or omissions of a city's officers in the discharge of a corporate duty to be performed for the city's quasi-private or proprietary concerns, and those acts performed for the general public interest.

It was held in the Hibbard case that the maintenance of a zoölogical garden in a public park was a governmental function, and that the city was not liable for injuries inflicted on visitors by animals through the negligence of the city's officers or agents in not properly confining the animals.

In *Rose v. City of Gypsum*, 104 Kan. 412, 179 Pac. 348, it was said:

"A municipality has a dual capacity—one as an agency of the state, in which it is vested with powers which are purely governmental, legislative and public; and the other which is proprietary, commercial, quasi-private and ministerial." (Syl. ¶ 1.)

In the opinion it was stated:

"A city has a sort of dual capacity—that of a corporation whose concerns are particularly its own, and that of a local governmental agency of the state. In the former capacity it may be liable for the shortcomings of its officers and agents, as in the case of a railway or mining or manufacturing corporation. In its latter capacity, as a local agent of the state government, it is ordinarily not liable, because its principal, its superior and sovereign, is itself not liable." (p. 417.)

In *Water Co. v. City of Wichita*, 98 Kan. 256, 259, 158 Pac. 49, this language was used:

"It is a thoroughly established proposition that a city has a dual capacity—one as an agency of the state in which it exercises powers purely governmental, legislative and public; the other as proprietary, commercial and quasi-private. (*City of Wichita v. Railroad & Light Co.*, 96 Kan. 606, 608, 152 Pac. 768.) In the exercise of its governmental powers, whether that exercise be wise or foolish, just or unjust, it is never liable thereon in the absence of a statute imposing such liability. Of course in its other capacity, the proprietary, commercial and quasi-private one, it may be subjected to liabilities and judgments like ordinary private corporations and individuals."

In *Todd v. Drainage District*, 109 Kan. 754, 201 Pac. 1096, it was said:

"A city is held liable without express statute for an injury resulting from the negligence of its employees if it is acting in its proprietary capacity, but not if the function undertaken is governmental . . . so the non-performance by a city of a class of duties described as 'ministerial' is held to constitute actionable negligence, even though such duties are connected with the performance of governmental functions." (p. 757.)

In *Bowden v. Kansas City*, 69 Kan., 587, 77 Pac. 573, it was said:

"A municipal corporation is performing a ministerial public duty in maintaining a fire station, and is liable in damages to an employee for personal injuries resulting from the neglect of the corporation to furnish him a reasonably safe place in which to work." (Syl.)

In the opinion the court said:

"The mayor and council were given power to appoint such officer, prescribe his duties, provide for his salary, and control him in the discharge of such duties as were imposed upon him, and hold him responsible for the manner in which he should perform them. Therefore, the fire marshal, while so acting, was the agent of the city and not an officer of the state." (p. 589.)

In the case of *Roberts v. St. Marys*, 86 Kan. 403, 121 Pac. 367, it was said:

"Municipalities, as employers, in maintaining a well, windmill and pump to furnish water to the public, are under the same obligation as other employers to furnish their employees a safe place to work, and, under like conditions, are likewise responsible in damages to an employee who is injured by the negligent failure to perform this duty." (Syl.)

The court, in the opinion, stated:

"The question in this case is between master and servant and rests upon the obligation of the master to furnish the employee a safe place to work. Municipalities, as employers, in maintaining a well, windmill and pump to furnish water to the public, are under the same obligation as other employers to furnish their employees a safe place to work, and under like conditions are likewise responsible in damages to an employee who is injured by the negligent failure to perform this duty." (p. 405; see, also, *Carillo v. Construction Co.*, 81 Kan. 823, 106 Pac. 1050; *Fowler v. City of Cleveland*, 100 Ohio 158.)

2. The defendant contends that a demurrer to plaintiff's evidence should have been sustained. Also, that judgment should have been rendered for defendant on the special findings.

The evidence, among other things, showed, substantially, that plaintiff was grubbing out trees under the orders of Smith, his foreman; that, about 3 o'clock in the afternoon, Smith directed him to "Take an axe and step up there and help work up the top of that tree"; that, when plaintiff started up, Smith said: "Throw that axe down and grab the end of that saw and help that man saw." He

did as directed and began sawing one of three large limbs of a tree that was lying upon the ground. Two of the limbs were on the ground while the place on the limb which plaintiff was directed to saw was about as high as a man's shoulder. The sawing proceeded until, without warning, the limb fell, catching plaintiff's leg which was bruised and fractured. The limb had previously been sawed underneath, and this fact caused it to unexpectedly fall.

Among other things, the following special questions were asked and answers given:

"Q 1. Was the plaintiff orally ordered and directed by his foreman, Tom Smith, to perform the work in sawing the limb at the time he was injured? A. Yes.

"Q 2. Did the plaintiff, pursuant to the orders of his foreman, Smith, undertake to saw off the limb of the tree at the time he was injured? A. Yes.

"Q 5. Were any appliances used so as to prevent the plaintiff from being injured in case the limb should suddenly fall during the time he was working at the point and place where he was injured? A. No."

Defendant's theory is that plaintiff assumed the risk and was guilty of contributory negligence because he did not see the saw-cut on the under part of the limb. The evidence showed that the foreman told plaintiff to "Hurry up, we want to work this up, get it worked up before quitting time."

In *Whetzell v. Railway Co.*, 105 Kan. 289, 182 Pac. 409, it was said:

"The rule is followed that a workman ordered into a place of danger and injured is not, by obeying such order, guilty of contributory negligence, unless the danger is so plain that no prudent man would encounter it." (Syl.; see, also, *Railroad Co. v. Morris*, 76 Kan. 836, 93 Pac. 153; *Carrillo v. Construction Co.*, supra.)

It was a question for the jury to determine whether or not the danger was so apparent that an ordinarily prudent person would not have encountered it. (*Young v. Railway Co.*, 82 Kan. 332, 108 Pac. 99; *City of Emporia v. Kowalski*, 66 Kan. 64, 71 Pac. 232; *Bowers v. Mildren*, 107 Kan. 584, 193 Pac. 318.)

The evidence was ample to sustain the special findings and general verdict of the jury, and no error was committed by the court in denying defendant's motion. The judgment is affirmed.