No. 34,136

CLAUDE CHEEK, *Appellee,* v. LILLIAN EYTH et al., *Appellants.*

(89 P. 2d 11)

Opinion filed April 8, 1939.

*Arthur F. Davis* and *Tinkham Veale,* both of Topeka, for the appellants.

*A. Harry Crane, Ward D. Martin* and *George E. Sinning,* all of Topeka, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action for damages for personal injuries alleged to have been caused by failure of defendant employer to furnish safe and proper tools for the use of the plaintiff. The case was tried in the district court of Shawnee county, a jury verdict rendered for the plaintiff, and defendant appeals.

Appellant's several specifications of error will be stated later, and examined. The principal question is whether, under the particular facts of the case, the defendant is entitled to have recovery barred by application of the doctrine of assumption of risk by the employee. Defendant, Lillian Eyth, who was engaged in the junk business in Topeka, had purchased some railroad dump cars and was having them wrecked at Council Grove, Kan. Plaintiff testified that while employed upon the job under foreman Krosky he was directed to use cold chisels, otherwise called chisel bars or cold cuts; that his job was to hold the cold chisel against the head of a rivet while another workman hit it with a sledge hammer; that on the morning

of December 22, 1936, he told the foreman that the cold chisel or chisels "were a bad bunch of tools"; that "they ought to be fixed"; that the one he was using "was a little rough on top and kinda fringed around the edges." He testified that he realized that there was some danger but "didn't realize there was that much"; that the foreman said, "Well, you go ahead and use these two and I will take these others and get them fixed and be right back"; that he said to the foreman, "these don't look much better, you better take them too," and that the foreman replied, "No, go ahead and use them and I will get these back as quick as I can." He testified that he would not have continued to work if the foreman had not promised to get the other chisels fixed and return them as soon as possible; that later in the day a portion of the defective chisel flew off, struck him in the face, inflicting painful, serious and permanent injury. He asked damages in the sum of $4,541.50, and was awarded $1,166.50 by the jury.

The contentions of appellant, the employer, may fairly be summarized as follows: (1) No authority was shown for Krosky to make a promise in behalf of the defendant to repair the cold chisel; (2) no proof was made that the piece of flying metal was from the cold chisel rather than from the rivet head, and that if it were from the latter recovery was barred because the workman had assumed the risk of such injury; (3) the court erred in not instructing the jury that negligence is never assumed but must be proved; (4) the court erred in failing to require the jury to state what constituted the negligence, if negligence were found; (5) the jury should have been instructed that in the case of a "common tool" with which the employee is familiar and of whose defects he had as much knowledge as the employer, and where neither apprehends any danger, the employer is not liable for injuries received in using it, and that if they found that the cold chisel is such a "common tool" and that the other named conditions existed, their verdict should be for the defendant.

The first two contentions may be readily disposed of. The record discloses that there was substantial evidence tending to show that Krosky was in charge of the work for the defendant; that the plaintiff was working under his directions and that in promising to have the cold chisels repaired he was acting within his authority. There was very substantial evidence that the piece of flying metal came from the battered head of the cold chisel. It is unnecessary to cite

the long list of cases in which this court has held that it will not assume the function of the jury in weighing conflicting evidence, and that where the verdict is supported by substantial evidence it will not be disturbed.

As to the third contention. The defendant was not prejudiced by failure of the court to give abstract instructions that negligence is never assumed but must be proven. The jury was fully and specifically instructed as to the negligence alleged and as to the essential facts it must find from a preponderance of the evidence in order to justify a verdict for the plaintiff.

Appellant's fourth contention is that the jury should have been asked to state what constituted the negligence, if negligence were found. Such a question might well have been submitted by the court, but under all the facts in the case failure to do so was not prejudicial error. The only negligence alleged was failure to provide a safe tool with which to work, and the instructions covered that question fully and clearly. The jury determined it by its general verdict, and also found specifically that the defendant, through her foreman who had had twenty-two years' experience in this kind of work, had better opportunity than the plaintiff to know the condition of the cold chisel, and that plaintiff protested the poor condition of the cold chisel to the foreman, who promised to have it repaired as soon as possible. It may also be noted that while the code of civil procedure provides that no party shall be entitled as a matter of right to request more than ten special questions to be answered by the jury, the court in this case submitted fourteen out of the fifteen special questions requested by the defendant.

Appellant stresses the fifth contention. She contends that if the cold chisel had become defective the plaintiff, who was using it, was well aware of its condition and that any danger in its use was an assumed risk incident to his employment. There is no need to discuss here the familiar doctrine of assumption of risk by an employee. The question is whether another general rule of law applies to the facts of the case and relieves the employee from assumption of risk. It is well established that where an employee complains about the defective and dangerous condition of the machinery or tools furnished for his use and the employer promises to have them repaired or replaced with good ones, and relying upon the promise the employee continues to work, as directed, the employer is liable, during a reasonable period thereafter, for the employee's injuries received in

using the defective tools, unless the danger was so apparent and great that no prudent man would have continued to subject himself to it. Since both appellant and appellee recognize the existence of this general rule, it is not necessary to cite cases generally in its support. Among the Kansas cases are: *Wurtenberger v. Railway Co.*, 68 Kan. 642, 75 Pac. 1049; *Railroad Co. v. Morris*, 76 Kan. 836, 93 Pac. 153; *Young v. Railway Co.*, 82 Kan. 332, 335, 108 Pac. 99; *Whetzell v. Railway Co.*, 105 Kan. 289, 182 Pac. 409; *Speer v. City of Wichita*, 113 Kan. 686, 216 Pac. 305; *Bowers v. Mildren*, 107 Kan. 584, 193 Pac. 318. The theory generally advanced in support of the rule is that the assumption of risk has been set aside for a reasonable period by a new contractual relationship arising out of the promise by the employer and compliance by the employee with the direction to go on working.

We are brought now to the heart of appellant's contention. She contends that the rule of law above stated does not apply in the case of "common tools;" that a cold chisel is a "common tool," and that therefore the plaintiff cannot escape assumption of risk. We are asked to hold as a matter of law that even admitting the complaint about the tool, the employer's promise to repair it, the employee's reliance upon the promise and his continuing to work at the direction of the employer, recovery is barred because of assumption of risk by the employee.

Appellant's contention is not without support in the decisions of some jurisdictions. There is considerable conflict of authority on the question and not a little confusion of reasoning. Some courts seem to have drawn the distinction urged by appellant and to hold that the rule which sets aside assumption of risk under the facts heretofore stated does not apply where the defective tools are ordinary or common tools with which the employee is entirely familiar and where he has as good or a better opportunity than the employer to know their condition. Other jurisdictions make no such distinction. We have examined all the Kansas cases cited by appellant and appellee, as well as other cases found. The issue justifies some analysis of them. Recovery was denied in some of the cases on the ground that the act complained of was that of a fellow workman who was without authority to bind the employer, and in some other cases no promise had been given to have repairs made. Such cases have no bearing on the issue here.

One of the principal cases relied upon by appellant is that of

*Ernst v. Railroad Co.,* 105 Kan. 706, 185 Pac. 1053. The defective tool involved was a pipe wrench. The plaintiff was a pipe fitter by trade and was thoroughly familiar with the wrench. The wrench had become worn and occasionally slipped while being used, and the plaintiff spoke to the foreman about it, who told him to go ahead and use it, and added, "I may get another one, maybe this evening or in the morning." A short time thereafter the wrench slipped, causing plaintiff to wrench his back and a radiator to fall upon him and bruise him. The court held that the evidence did not disclose any real apprehension of danger in the use of the wrench, nor any promise to remove or dispel danger. In the instant case the evidence did show appreciation of danger, a complaint and a definite promise to repair the tools.

In *Railway Co. v. Weikal,* 73 Kan. 763, 84 Pac. 720, the plaintiff had been injured by a chip which flew from a steel chisel, and recovery was barred on the ground that plaintiff had assumed the risk, but in that case there was no allegation that the tool was defective or that any promise had been made to provide another tool. The question was whether the defendant had properly warned the plaintiff of the dangers of the employment.

In *Gillaspie v. Iron-works Co.,* 76 Kan. 70, 90 Pac. 760, the plaintiff was injured while holding a "snap" or "set" on the head of a rivet—the snap being struck by a hammer in the hands of another workman. He had been a car repairer for a year, wrecking cars and working along similar lines. He and a fellow workman had gotten the snap from a tool box, and no complaint about its condition had been registered and no promise of repairs made.

In *Walker v. Scott,* 67 Kan. 814, 64 Pac. 615, plaintiff was injured by a cave-in of a trench in which he was working. He had told the foreman that he thought there would be a cave-in and in a jocular way had offered to bet that there would be, but the foreman did not agree that there was danger and made no promise to do anything about it. The court held that under such circumstances the employee assumed the risk.

Many cases cited by appellant deal simply with the general doctrine that where the employee is entirely familiar with the tools and no failure to warn of unseen dangers is involved, the employee assumes the risk. It is true that these cases often deal with "common tools" since obviously the doctrine of assumption of risk is clearly applicable in such cases. But we find no decision of this

court where recovery was barred on the ground that the defective tool involved was a "common tool," where complaint had been made and the workman continued to work at the direction of the employer and in reliance upon his promise to remove the danger.

Many decisions of this court support the contention of appellee. The defective tool involved in *A. T. & S. F. Rld. Co. v. Sadler,* 38 Kan. 128, 16 Pac. 46, was a maul. Plaintiff's recovery was upheld even though the promise to have the tool repaired had not been made particularly to the plaintiff but only generally to the gang of workmen and in his presence. The tool involved in *S. K. Rly. Co. v. Croker,* 41 Kan. 747, 21 Pac. 785, was an ordinary stone hammer used in breaking rock for ballast. The handle of the hammer was a green and crooked stick cut from the brush near where the work was being done. Plaintiff complained to the section foreman about the handle, saying that he had been slightly injured before by the use of such a handle, but the foreman told him to continue to use it and he would get a good one within a few days. His eyesight was injured by a flying particle of stone. Judgment for the plaintiff was upheld.

In the case of *Anders v. Railway Co.,* 91 Kan. 378, 137 Pac. 966, the negligence alleged was the furnishing of poor quality of oil for plaintiff's lantern, as a result of which he suffered injury on account of the poor light while doing his work. While the case was reversed for new trial, the court stated that if the oil furnished was not of good quality so as to afford a good light and the plaintiff complained about it to the proper person, it then became the duty of the defendant to remedy the defect and if he failed to do so within a reasonable time he would be liable.

A "lifting jack" was involved in the case of *Railway Co. v. Puckett,* 62 Kan. 770, 64 Pac. 631. Recovery was permitted because there had been a recognition of the danger in using the defective tool and the plaintiff had continued to work after a promise that the tool would be repaired or a better tool substituted. The "lifting jack" was a tool used to lift the railroad track so that defective ties could be removed. While it is not as "common" a tool as a cold chisel, there was nothing complicated about it which the workman did not understand. A similar case is that of *Johnson v. St. Joseph & G. I. Rly. Co.,* 125 Kan. 38, 262 Pac. 494. The tool was a "tie tongs," a simple device used in pulling up old railroad ties. The workman complained that the tongs were dull and were slipping

and that they should be repaired. The foreman promised to have the repairs made and told the workman to go ahead and use them. The trial court sustained a demurrer to the evidence on the ground that there was assumption of risk, but the case was sent back on the ground that the evidence was sufficient to take the case to the jury.

See, also, *Railway Co. v. Quinlan*, 77 Kan. 126, 93 Pac. 632, *Brooks v. Manufacturing Co.*, 94 Kan. 86, 145 Pac. 840; *Steele v. Railway Co.*, 87 Kan. 431, 124 Pac. 169; and *Lupher v. Railway Co.*, 86 Kan. 712, 122 Pac. 106.

The case falls clearly within the decisions of this court holding employers liable. The jury had testimony from which it could find that the foreman had had long experience in this line of work while the plaintiff had only had two or three days of such experience, that the tool was defective, that complaint had been made and definite promise given to make the repairs, and that the plaintiff relied upon the promise and continued to work at the direction of the foreman. We find no reason to upset the verdict.

The judgment is affirmed.