No. 34,311

E. O. PARKER, *Appellant*, v. THE CITY OF WICHITA, *Appellee*.

(92 P. 2d 80)

Opinion filed July 8, 1939.

*A. V. Roberts, Benjamin F. Hegler* and *Verne Roberts*, all of Wichita, for the appellant.

*Vincent F. Hiebsch, K. W. Pringle* and *Forest V. McCalley*, all of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: The plaintiff, an employee of the defendant city, brought an action to recover damages for injuries sustained during the course of his employment. The trial court sustained a demurrer to his evidence and rendered judgment for defendant, and the plaintiff appeals.

The gist of the allegations of plaintiff's petition was that he was a common laborer employed by the city for many years and engaged for a considerable time as a cement finisher; that on April 13, 1937,

he was working under a foreman who in turn was under the city engineer; that plaintiff was directed to take certain chisels and a hammer and make a cut in a concrete pavement in order that the cut might be filled with asphalt for an expansion joint; that this kind of work was not within his general experience; that he was not informed but proceeded under instructions given him; that he had not worked long until particles chipped from the concrete flew into his right eye; that the city failed to furnish him with proper safeguards in that it failed to furnish him with glasses to protect his eyes from the flying particles; that it was a common practice and was usual and common for workers in such work to be furnished glasses, but that plaintiff did not know that glasses were necessary, etc.; that as a result of the particle in his right eye he lost the sight thereof and that such loss was occasioned by the negligence of the city in failing to furnish him with glasses when sending him to do the work. Briefly stated, the city's defense was that plaintiff had been directed to use glasses to protect his eyes in doing the work; that he had proceeded to work without getting the glasses; that he had assumed the risks of his employment; that he had not had his injured eye properly treated if he did have concrete chips or dust therein, and that if plaintiff did lose his eye from some cause it had not incapacitated him as a cement finisher, as he had been steadily employed since a short time following his accident. The answer also denied negligence on the part of the city, and alleged the petition did not state a cause of action against the city.

At the conclusion of the introduction of plaintiff's evidence the defendant demurred on the ground no cause of action had been proved, and on the further ground that it showed plaintiff had assumed the risks of his employment.

In considering appellant's contention that the trial court erred in sustaining the demurrer, we follow the rule often stated that the plaintiff's evidence shall be considered as true, that unfavorable parts shall be disregarded, contradictions shall not be weighed, nor any differences between direct and cross-examination, and if there is any evidence which sustains plaintiff's case, the demurrer must be overruled. (See *Hill v. Southern Kansas Stage Lines Co.*, 143 Kan. 44, 53 P. 2d 923; *Shoup v. First Nat'l Bank*, 145 Kan. 971, 975, 67 P. 2d 569; *Robinson v. Short*, 148 Kan. 134, 79 P. 2d 903; and *Hurla v. Capper Publications, Inc.*, 149 Kan. 369, 87 P. 2d 552.) For the purpose of clarity, we review the testimony so that statements per-

taining to particular matters may be stated together, rather than in the order in which questions were asked and answered.

Plaintiff was thirty-nine years of age, and from 1928 was employed as a cement finisher, whose duty it was to take care of and smooth concrete after it was poured. He knew how it was mixed, the varying proportions of sand and cement to be used for different purposes; that concrete continues to harden until it is about five years old and becomes brittle and hard, and that it is more difficult to chip and work with than ordinary stone. For a time he had a cement contractor's license and completed six or seven jobs of sidewalks, driveway and approaches, where old concrete was removed by use of a sledge hammer, and that the blow of the hammer caused particles to fly. He had been employed by the city about nine months at the time of the accident. On the day of the accident plaintiff reported for duty at a designated place where the WPA foreman gave orders for the day. He told plaintiff to go to a car and get a hammer and chisel and to cut concrete for an expansion joint in the street pavement by cutting on a length approximately one inch wide, to check the concrete and to take a chisel and cut it out; that plaintiff had never cut concrete of that kind before; that the foreman gave him no glasses or goggles, nor did plaintiff ask him for any; that his work before that had been finishing concrete before it set and became hard and there were no flying particles; that he had not performed any work breaking and cutting concrete prior to that time; that as directed he went to work. When he started work he faced into the wind, and he noticed the dust blew into his right eye, but he did not know when any particles hit his eye. Up to this time no one suggested the use of glasses or goggles. He did not feel any pain in his eye, but it irritated him. He went on with his work the next day and that evening his eye began hurting him and he went to his family doctor, who swabbed out the eye. The next morning he told the foreman his eye was hurting him and the foreman gave him some dark glasses which eased the pain and he went on working. The next day he did not work, as it was his day off. The following day his eye was hurting so he could not work and the foreman had him taken to another doctor, who proceeded to remove from his eye some particles that were there. Later the eye became infected and it was necessary to remove it. He was at home ten days and then went back to work, and on similar work he was furnished with glasses or goggles.

The doctor who removed the eye stated his record showed that something had happened to plaintiff's eye on April 12; that he saw plaintiff on the 16th and found a foreign body in the eye. The foreign substance was not examined—it was a rock formation of some kind.

The journal entry of judgment does not indicate the particular reason why the trial court sustained the demurrer, whether because the evidence showed there was no liability of the city to the plaintiff by reason of the nature of the employment, or because it showed the plaintiff assumed the risks of his employment, or for some other reason.

From the allegations of the petition and from the evidence it is clear that plaintiff was an employee of the city and was seeking to recover damages for injuries sustained by him by reason of claimed negligence of the city in not furnishing him with a safe place to work or with proper and sufficient tools with which he could work safely. It is equally clear that the work in which he was engaged was repair or improvement of a street paving. That repair or improvement was the performance of a governmental function. It is the recognized rule in this state that in the absence of a statute imposing liability therefor, a city is not liable for the negligence of itself, its officers and employees, in the performance of a governmental function. (See *Foster v. Capital Gas and Electric Company*, 125 Kan. 574, 265 Pac. 81, and also *Wray v. City of Independence*, this day decided, post, p. 258, and cases cited.) Although we recognize liability of a city to travelers injured by defects in the streets, we know of no statute, and none is cited in the briefs, which makes a city liable for negligence to one employed by it in maintaining its streets.

Appellant, in his brief, however, argues the demurrer was sustained on the erroneous conclusion that plaintiff had assumed the risks of his employment. In this connection, much more stress is placed on a contention that there was failure to prove a contract of employment whereby plaintiff assumed the risks of his employment, rather than on the factual situation disclosed by the evidence.

A brief review of the evidence shows that while plaintiff had not been engaged personally in cutting concrete with a hammer and chisel, he had for many years been engaged in concrete work, knew how concrete was made, that it became hard and brittle; that it was more difficult to chip than ordinary stone; he had broken it with a sledge hammer and observed particles would fly from the blow. The

plaintiff, familiar with the general situation, and using common tools, knew as much about the risks of his employment as did the WPA foreman under whose direction he was working. It seems unnecessary here to discuss at length the law applicable to such a situation—that the workman assumed the risk of his employment. Although much different states of fact were being considered, the reasoning of the following cases compels the above conclusion: *Railway Co. v. Bancord,* 66 Kan. 81, syl. ¶ 2, 71 Pac. 253; *Walker v. Scott,* 67 Kan. 814, 64 Kan. 615; *Railway Co. v. Weikal,* 73 Kan. 763, 84 Pac. 720; *Davis v. City of El Dorado,* 126 Kan. 153, 267 Pac. 7. (See, also, the discussion in the recent case of *Cheek v. Eyth,* 149 Kan. 586, 89 P. 2d 11, where many of our decisions dealing with defective tools and assumption of risk are mentioned and discussed, and see Restatement, Agency, § 521.)

Appellant contends, however, that the doctrine of assumption of risk is based on contract, express or implied, and that the evidence fails to disclose such a contract. That such is the law may be conceded.

In *Railway Co. v. Bancord,* 66 Kan. 81, 88, 71 Pac. 253, it was said:

"But, reduced to its last analysis, the doctrine of assumed risk must rest for its support upon the express or implied agreement of the employee that, knowing the danger to which he is exposed, he agrees to assume all responsibility for resulting injury. To raise an implied agreement the risk assumed must be known to the employee, or it must be of such nature as, by the exercise of reasonable observation and caution for his own safety, he should have known it. It can never be said that one has agreed to assume responsibility for that of which he had no knowledge, or of the existence of which he is not chargeable with notice." (p. 88.)

(See, also, *Manufacturing Co. v. Bloom,* 76 Kan. 127, 131, 90 Pac. 821, and 7 C. J. S. 137.)

We think, however, that the evidence does show that by reason of plaintiff's previous experience he did know that when concrete was struck by metal, chips of concrete would fly into the air; he said he knew that as a result of pounding concrete curbs with a sledge hammer. When he went to work at the particular place, he was furnished with common tools, a chisel and a hammer. As soon as he started work, dust and particles flew up and struck him in the face. He needed no foreman, superintendent or any other person to tell him that if a particle of the concrete rested in his eye it might cause him pain and injury. Notwithstanding that, he continued to work

facing into the wind, with dust and particles flying back into his face, although there is no evidence anyone told him to work in that manner. Reasonable observation and caution for his own safety should have caused him to cease work in that particular manner, but he so continued all of the first day. It will not do to say he did not know dust and particles might fly into his eye for, as soon as he started work, they hit him in the face. We think the testimony was susceptible of no other interpretation than that plaintiff knew or by the exercise of ordinary caution should have known the risk involved, and by undertaking the work and continuing it he impliedly agreed with his employer to assume the risk.

The trial court did not err in sustaining the demurrer to the plaintiff's evidence, and its judgment in favor of defendant is affirmed.