No. 30,324.

EARL TURNER, by His Next Friend, LILLIE TURNER, *Appellee,*
v. GEORGE RUSHTON BAKING COMPANY, *Appellant.*

(11 P. 2d 746.)

Opinion filed June 4, 1932.

*David F. Carson, T. F. Railsback,* both of Kansas City, and *Horace Guffin,* of Kansas City, Mo., for the appellant.

*C. D. Bruce,* of Kansas City, and *W. W. McCanles,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This was an action to recover damages growing out of an automobile accident. The plaintiff prevailed, and the defendant appeals.

The accident occurred on Sunday afternoon, February 9, 1930, about sixty feet north of the junction of Rainbow boulevard and Adams street in Kansas City, Kan. Adams street and Rainbow boulevard join near Thirty-eighth street and extend north under the name of Rainbow boulevard. Rainbow boulevard comes into Adams street from the southeast. The plaintiff, with two companions, was riding in a car on the boulevard. They saw a pocketbook lying in the street about sixty feet north of the junction. They parked their car on the west side of the street at the junction, and the plaintiff, a boy fifteen years of age, went back to get the pocketbook. He went along the west side of the street on the parking until he was

directly west of the pocketbook and then walked out in the street to pick it up. The street was forty feet wide and the pocketbook was about the center of the street. A string was tied to the pocketbook and a boy was at the other end of the string west of the boulevard. The plaintiff picked up the pocketbook and about that time one of the boys holloed, and he started back towards the west curb. The defendant's delivery truck, driven by Charles Cohrs, was traveling north on the boulevard. The truck was a model A Ford, with a specially designed closed body for the purpose of carrying pies and bread. He was driving between fifteen and thirty miles an hour. The driver of the truck saw the plaintiff get out of the car, go back along the street and pick up the pocketbook. He turned to the left and attempted to pass the plaintiff. There is a dispute in the testimony relating to the location of the plaintiff at the time he was struck, and whether it was the front or rear fender that struck him. The plaintiff was injured. He was unconscious for several minutes. His back and hip were injured to such an extent that he was confined to his home for three weeks. At the expiration of this time he returned to his work. The jury returned a general verdict in favor of the plaintiff in the amount of $5,000, and answered special questions as follows:

"1. At and immediately prior to the accident complained of in plaintiff's petition, what, if anything, was there to prevent the plaintiff from seeing the approaching car? A. Plaintiff had his back to defendant's car, which was traveling on wrong side of street.

"2. What part of the defendant's car came in contact with the body of the plaintiff? A. Right front fender.

"3. If you find for the plaintiff, of what, if any, negligence do you find the defendant guilty? A. Driving on the wrong side of street, no warning."

At the close of plaintiff's testimony the appellant interposed a demurrer which was overruled by the court, and this is assigned as error.

The appellant argues that under the evidence the appellee was negligent in that he went upon a thickly traveled street in broad daylight, with full knowledge of the passage of cars to and fro, and deliberately backed into the car driven by the appellant, and that the court should have held the appellee guilty of negligence as a matter of law.

There were four witnesses to the accident, exclusive of the truck driver and the appellee. The appellee testified that the pocketbook was lying very near the middle of the street; that he did not enter

the street until he was even with the pocketbook. "I looked up the street to see if there was any traffic coming and there was not. I went to get the pocketbook and I turned around facing the north. As I turned around facing the north, I walked towards the west curb, watching the traffic that was coming up on the west side of the curb, and I didn't think there would be a car coming down on the wrong side of the street. As I was watching the traffic on the other side, on the west side of the street, I heard one of the boys holler and that is all I ever knew."

John Aldrich, one of the boys who was riding with the appellee in the car, testified as follows:

"He picked up the pocketbook and started back towards the west curb, and he was about six or eight feet from the curb when this bakery truck came around the corner from Rainbow and instead of driving on his own side he cut in behind this boy and this boy was going backwards, facing the northeast, and he ran right in behind him, and the car struck him as he was backing in. It was the right front fender that struck the boy."

Another witness, who was riding in the car with the appellee, testified as follows:

"Earl picked up the pocketbook and looked to the north and there wasn't any cars or anything in sight there close enough to interfere with his passage to the curb. He picked it up and started to go toward the west curbing of Rainbow boulevard, facing not exactly west or north, nor exactly south, when this truck coming down Rainbow boulevard at about thirty miles an hour, came around the corner, and when it neared Earl the brakes were applied and the car turned to the left to avoid the accident—the truck was going north and it turned to the west. The brakes were applied heavy and the fender struck Earl and the left front wheel hit the curbing."

One of the boys who was operating the string attached to the pocketbook testified:

"Someone came back from the car. He had a blue sweater on—and he picked the pocketbook up and when he did the kid that had the string hollered at him, and then he saw the string and started over towards the curb and got about eight or ten feet from the curb and some one hollered and he sort of stopped, and just then this car came around there and he hit him."

Three of the witnesses to the accident testified that they did not hear the horn. One witness, however, testified that he heard the horn at about the time the car struck the appellee. The testimony clearly shows that there was nothing to prevent the driver of the truck from seeing the appellee for a distance of at least one hundred feet south of the place of the accident. The general rule is that the defense of contributory negligence is a question of fact to be de-

termined by the jury. (*Keir v. Trager,* 134 Kan. 505, 7 P. 2d 49.) This case does not appear to be an exception to the general rule. It is argued by the appellant that since the appellee was near the middle of the street facing the north, that the statutory rule with reference to passing vehicles traveling in the same direction would apply, and that under this rule the driver of the truck was fully justified and could not be charged with negligence in turning to the west or left side of the street to pass the appellee. (R. S. 8-123.) The difficulty with this argument is that the evidence does not warrant the inference that the appellee was traveling toward the north. The testimony is that he went directly east to the middle of the street, picked up the pocketbook and was returning to the west side of the street when the accident occurred. The driver of the truck had ample opportunity to view the circumstances. He is charged with seeing what was in the range of his vision. (*Mc-Donald v. Yoder,* 80 Kan. 25, 101 Pac. 468.) He observed the appellee approaching the middle of the street from the west, pick up the pocketbook and his movement toward the west side of the street. We cannot say as a matter of law that the appellee was negligent in entering upon the street to pick up the pocketbook, neither can we say that he was negligent as a matter of law in failing to look toward the south. He was not on the east side of the street. He had the right to assume that the users of the highway would observe the law of the road and he is not charged with negligence in relying upon such assumption. (*Keir v. Trager,* supra; *Kersting v. Reese,* 123 Kan. 277, 255 Pac. 74.) There is very little, if any, evidence of negligence on the part of the appellee, but, in any event, the oft-repeated rule that where the evidence relating to contributory negligence is of such character that reasonable minds might reach a different conclusion thereon it presents a question of fact for determination by the jury, must be adhered to in this case. (*Lilly v. Wichita Railroad & Light Co.,* 127 Kan. 527, 274 Pac. 205; *Zumbrun v. City of Osawatomie,* 130 Kan. 719, 288 Pac. 584.)

The appellant contends that the court erred in overruling appellant's motion to set aside the answer to finding of fact number two on the ground that it is contrary to the evidence and not supported by the evidence. The witness Aldrich testified that "it was the right front fender that struck the boy," while the witness Turner testified

that it was "the right rear fender, to my knowledge." It was within the province of the jury to determine which witness it would believe. Apparently the jury accepted the testimony of Aldrich, and the trial court approved their choice. This court is bound thereby.

It is next contended, and earnestly argued, that the court erred in overruling appellant's motion for a judgment notwithstanding the general verdict. The petition alleged that the appellant was negligent in the following particulars:

"(a) In that they did not give the plaintiff any reasonably sufficient warning of the approach of said truck.

"(b) In that they were operating said truck on the west and wrong side of said boulevard; that the plaintiff was struck about six feet from the west curb of said boulevard.

"(c) In that they did not have said truck under reasonable and proper control.

"(d) In that they did not keep a reasonably sufficient lookout for plaintiff.

"(e) In that they saw the plaintiff in a position of danger and peril from which he could not extricate himself in time thereafter by the exercise of reasonable care and caution to have stopped said automobile or slackened the speed thereof, or turned the same aside or have given reasonably sufficient warning of the approach thereof in time thereafter to have avoided striking plaintiff, all of which they negligently and carelessly neglected and failed to do."

Appellant argues that the last specification of negligence is an attempt to charge the appellant under the last-clear-chance theory, and that the preceding four allegations of negligence blend in with and become a part of the final charge. From this he reaches the conclusion that the only theory on which the appellee was entitled to recover is under the doctrine of the last clear chance. It is argued that the last-clear-chance doctrine presupposes negligence on the part of the injured person, and he must therefore clear himself of negligence before he can recover. We are inclined to agree with appellant's theory as to the doctrine of last clear chance. This court said in *Tarter v. Missouri-K.-T. Rld. Co.*, 119 Kan. 365, 367, 239 Pac. 754:

"The case turns on that doctrine. [Last clear chance.] It is a rule of law which makes the defendant liable where the plaintiff through his own negligence has placed himself in a place of danger from which he cannot extricate himself and where the defendant saw or should have seen the situation of the plaintiff in time to avoid injuring him." (See cases there cited.)

The last-clear-chance doctrine, being a rule of law, the pleadings and facts found by the jury must come within the rule to make it

applicable. There are five specific charges of negligence either one of which, if established, would support a judgment. The appellee had the right to charge all of the acts of negligence known to him. He could, of course, only recover on such acts of negligence as are established by the evidence. (*Benelli v. Atchison, T. & S. F. Rly. Co.,* 120 Kan. 237, 243 Pac. 1004.) We have trouble in finding that the allegations of the petition are sufficient to bring the appellee within the doctrine. The allegation that the appellee was in a position of danger and peril does not concede that he negligently assumed such position. The evidence does not show and the jury did not find that he negligently assumed a position of peril. The jury found that he did not see the approaching car because the car was traveling on the wrong side of the street, and that the truck driver was guilty of negligence in that he was driving on the wrong side of the street and failed to give any warning of his approach. The facts found take the case out of the doctrine of last clear chance and make the rule inapplicable.

The findings of fact are supported by substantial evidence. The driver of the truck admitted that he saw the appellee from the time he left the car until he attempted to pass him in the street. He had ample opportunity to give a warning signal, and the evidence clearly shows that had he kept on the right side of the street he would have avoided the collision and its consequences.

It is next contended that the verdict is excessive. The appellee challenges the right of the appellant to be heard on this question for the reason that it was not specified as one of the grounds upon which a new trial was asked. (*Garcia v. Slater-Breitag Yeamans Motor Co.,* 128 Kan. 365, 368, 278 Pac. 23.) The motion for a new trial contains all of the statutory grounds. No reference is made to an excessive verdict except as it may be implied in the statutory grounds set out in the motion. The record shows that in the argument of the motion the court's attention was specifically called to the amount of the verdict, and it was urged that the verdict was excessive when considered in connection with the extent of the injury. While we think it is the better practice to raise this question specifically in the motion for a new trial, which would eliminate any question as to its being presented to the trial court, we hold that the record in this case sufficiently shows that the question was fairly presented and considered by the trial court, and that it is properly here for review.

The jury allowed the appellee $5,000 and found that he suffered an injury to his hip and spine. The evidence was to the effect that the boy was unconscious for about forty-five minutes; that he was confined to his home for three weeks and then returned to his work. Since that time he has engaged in school athletics and performed the work of a normal boy. Appellee's doctor testified:

"I found he had a left innominate lesion. And also a lesion of the twelfth rib on the left side. A lesion downward. I found a scar on the left hip, of no special importance at the present time, only as evidence of some injury. I found in the cervical region there was a posterior occiput; also a right lateral first cervical vertebra."

The doctor further testified that he could cure all of the injuries with osteopathic treatment, and that the injuries were not permanent. The court appointed a commission of three doctors to examine the appellee. They found that the appellee was not permanently injured. Their examination showed, however, that he had high blood pressure, increased pulse and albumen in the urine, indicating some disease in the genito-urinary tract, which was not attributed to any traumatism or injury but probably came from some disease of the kidney. In view of this testimony the court is of the opinion that $5,000 is excessive, and that the judgment should be reduced to $3,500, the appellee to be given the election to accept that amount or another trial upon that issue. The judgment will be modified in respect to the amount of the judgment, and as modified, affirmed. It is so ordered.