No. 39,000

A. P. EMRIE, *Appellee*, v. GALEN M. TICE, M. D., *Appellant*.

(258 P. 2d 332)

Opinion filed June 6, 1953.

*Leonard O. Thomas,* of Kansas City, argued the cause, and *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder, Lee E. Weeks, Blake Williamson, James K. Cubbison* and *Lee Vaughan,* all of Kansas City, were with him on the briefs for the appellant.

*John E. Blake,* of Kansas City, argued the cause, and *Bill E. Fabian* and *Robert E. Fabian,* both of Kansas City, and *Sam B. Sebree, Edgar Shook, David R. Hardy,* and *James H. Ottman,* all of Kansas City, Mo., were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: The petition in a malpractice case was framed on two separate theories. The first cause of action was based on specific allegations of negligence. The second cause of action was predicated on the doctrine of *res ipsa loquitur*.

Defendant appeals from the orders overruling his demurrer to each count contending neither stated a cause of action.

The amended petition, omitting the caption, allegations as to the total amount of damage and prayers is appended hereto for reference and as a part hereof.

Appellant motioned both causes of action, contending they should be made definite and certain. The motion directed to the first cause of action, which we shall consider first, contained sixteen paragraphs, some of which were multiple in character. Some parts of the motion were in the alternative in that they sought to have certain allegations stricken unless the first cause of action was made to comply with appellant's motion to make it definite and certain.

Paragraphs five and sixteen of the motion were as follows:

"5. That paragraph 3 be made definite and certain by setting forth whether or not it is claimed that the defendant personally examined the said wart or growth, the date on which said examination was made, and to whom the defendant gave advice as to whether the said growth could be removed.

"16. That paragraph 5 of the said petition be made definite and certain by setting forth the sums of money which the said plaintiff has expended for care and treatment, and the amount that he is informed and believes he will be obliged to spend in the future, and the names of the doctors and hospitals that have furnished the said treatment to the said plaintiff."

Paragraphs five and sixteen of the motion were sustained and the amended petition conformed to that order. In other respects the motion was overruled. In construing the sufficiency of a pleading all of the allegations thereof are to be considered together, and it is not proper to segregate allegations and determine the sufficiency without respect to the context of the whole pleading. (*Fyne v. Emmett*, 171 Kan. 383, 233 P. 2d 496.) Upon studious analysis and consideration of each part of the motion and of allegations of the original petition as a whole we have concluded the trial court did not abuse sound judicial discretion in overruling other portions of the motion. Under repeated decisions of this court, relied on by appellee, the amended petition, therefore, was not rendered subject to strict construction

on demurrer. (*Henderson v. National Mutual Cas. Co.*, 164 Kan. 109, 187 P. 2d 508; *Powell v. Powell*, 172 Kan. 267, 239 P. 2d 974; *Moffet v. Kansas City Fire & Marine Ins. Co.*, 173 Kan. 52, 224 P. 2d 228.) We, therefore, need not discuss the abstract question argued by the parties whether the demurrer should be sustained if the amended petition were to be strictly construed.

It is not the function of a petition to narrate the evidence. It is sufficient to set forth the substantive facts in ordinary and concise language. (*Du Bois v. City of Galena*, 128 Kan. 253, 276 Pac. 802.) A petition which fairly apprizes defendant what plaintiff's claim is to be is not properly subject to a motion to make definite and certain and where a motion thereto is properly resisted and overruled the rule of strict construction on demurrer does not apply. (*Zink v. Basham*, 164 Kan. 456, 460, 190 P. 2d 203; *Henderson v. National Mutual Cas. Co.*, supra.) For a careful detailed analysis of rulings on a motion to make a petition in a malpractice case definite and certain, see *Zink v. Basham*, supra.

We turn now to the questions presented by appellant on his demurrer to the first cause of action of the amended petition. They are:

"A. Is the chairman of one of the departments established by the State of Kansas in order to administer its governmental functions liable, under the doctrine of respondeat superior, for the negligence of a subordinate in the same department? If he is not liable in the absence of personal fault, the demurrer to count 1 should be sustained.

"1. In construing the amended petition, the allegations should be strictly construed against the appellee, each allegation in the alternative must sustain the claimed cause of action, and allegations of general negligence are not sufficient to state a cause of action.

"2. Applying the foregoing rules relating to strict construction, alternative pleading, and pleading of general negligence, the amended petition does not allege that appellant was guilty of any personal malfeasance or misfeasance.

"3. Does the amended petition, which does not allege appellant to have been personally negligent, state a cause of action?"

With respect to "A" above referred to, the amended petition clearly discloses this is not an action against a state hospital or against appellant in a governmental capacity but against him in his personal capacity as an expert or specialist in the treatment of human ailments by X-ray and radium therapy. The action is based on allegations which, in substance, are:

Appellant personally examined appellee, advised him the wart or growth on the upper part of his right ear could be removed and

recommended it be removed by X-ray treatment; that appellant assumed the duty of properly and safely removing it by X-ray and radium therapy treatments; such treatments were at all times under appellant's direction, supervision and control and he supplied such treatment.

There are allegations appellant assumed personal responsibility for the treatment. Other allegations are that it was upon this basis appellee submitted himself to appellant for treatment.

Allegations pertaining to appellant's position as a faculty member of the school of medicine and that he was a staff member of the hospital in charge of its X-ray and radium therapy department were descriptive of the high rank and position of responsibility held by him in the particular scientific field involved. It appears they were pleaded as inducements which prompted appellee to submit himself to appellant for examination and to have the wart or growth removed by him. The petition alleged appellant, not someone else, made the examination and that appellant assumed the obligation of rendering the professional service. In paragraph 4 of the first cause of action are set forth the specific negligent acts with which appellant is charged. Appellant contends these allegations of negligence are pleaded in the alternative. We think it cannot accurately be said paragraph 4 (1) is pleaded in the alternative. In any event the alternative allegations contained in paragraph 4 (2), (3), (4) and (5) are not demurrable for the reason a plaintiff may charge such negligence in the alternative where, as here, each alternative act alleged constitutes a violation of a defendant's duty under the alleged assumption of a defendant's personal responsibility for treatment. Of course, the allegation of such assumption of responsibility may or may not be established on the trial. With that question we have no present concern. For the purpose of ruling on the demurrer the allegation of appellant's assumption of personal responsibility stands admitted.

A petition which contains alternative averments is good as against a demurrer where a cause of action is stated under either an alternative averment or set of averments. (*Miller v. Johnson,* 155 Kan. 829, 130 P. 2d 547; *Kloepfer v. Chicago, Rock Island & Pacific Rld. Co.,* 174 Kan. 96, 254 P. 2d 243; 41 Am. Jur., Pleading, §§ 41, 42.)

A party may charge all the acts of negligence known to him but may recover on only such acts of negligence as are established by proof. (*Turner v. George Rushton Baking Co.,* 135 Kan. 484, 489,

11 P. 2d 746.) The petition, however, must state a cause of action on each theory. See *Gibson v. Bodley,* 156 Kan. 338, 344, 133 P. 2d 112; *Kloepfer v. Chicago, Rock Island & Pacific Rld. Co.,* supra, as applied to pleading negligence and the doctrine of last clear chance. In view of the allegation of appellant's assumption of duty to remove properly and safely the wart or growth by X-ray and radium therapy we think we are obliged to say a cause of action was stated under either of the alternatives° alleged in the first cause of action irrespective whether the injuries were caused by appellant's personal negligence in treating appellee, by improper supervision and direction of another, or others, who may have assisted him, or whether he failed to supervise properly the particular work he had personally assumed in order to see it was performed with due care. Here again we are not presently concerned with what the evidence may be on any phase of the subject but only with the sufficiency of allegations in this particular petition.

Appellant relies on *Sproul v. Russell,* 135 Kan. 620, 11 P. 2d 978, in which it was held:

"Where one engaged a dentist to construct a set of false teeth there is no presumption that all the work of constructing the teeth will be done by the dentist in his office, and the fact that the dentist sent the teeth to a laboratory for vulcanizing and finishing will not deprive him of his right to be paid for his services." (Syl. ¶ 1.)

The opinion discloses the decision is not controlling here. Among other distinguishing factors in that case this court stated:

"An attempt is made to bring the case under the rules announced a number of times where it has been held that contracts that involved special skill or had a personal element in them could not be assigned. *We have concluded that the construction of a set of teeth does not come under this rule.* It will be noted that the petition does not allege that appellee induced appellant to believe that he himself would do all the work involved in the construction of the teeth nor does the petition allege that it is due to the work performed by others than appellee that the teeth did not fit. Appellant urges that there was an implied warranty that appellee would do the work himself in the very nature of things. He attempts to draw an analogy between this case and that of a highly trained and skilled surgeon whom one would engage to perform an operation, relying on his special skill and training. It would be a more nearly correct analogy, however, to compare this case with that of a skilled optometrist, who fits a pair of glasses to a patient's eyes and then sends a prescription to an optical company, which is equipped with the machinery to grind the lenses according to the prescription. It is such a common practice in the profession of dentistry for dentists to take the impression of the patient's jaw and do all things that have to do with the fitting of the teeth in the mouth and then send them to what is known as a mechanical dentist for the work of

vulcanizing and polishing, that this court will take judicial notice of it. The petition alleges that this is what appellee was doing in this case. We conclude that in doing this appellee was following the recognized practice in his profession, and the fact that he did that constituted no reason why he should not be paid for his services." ( Our italics. ) ( p. 622, 623. )

Appellant also leans heavily on *Hohenthal v. Smith,* 114 F. 2d 494. The portion of the opinion relied on by appellant is not applicable here. The instant case does not pertain to negligent treatment or care of a patient by a nurse or other hospital employee *after an operation has been performed* by a doctor. It pertains solely to alleged negligence involving the specific services for which appellant was personally employed and which it is alleged he assumed the duty to perform properly.

Appellant likewise relies on *Warren v. City of Topeka,* 125 Kan. 524, 265 Pac. 78, 57 A. L. R. 555. There negligence was charged against the city and a party who under contract with the city was operating a swimming pool in the city park over which the city reserved complete supervision and control including the entire park and property therein and the right from time to time to impose rules and regulations as to the operation of the concessions granted. It was held the individual defendant was more nearly an employee of the city than a lessee and that a breach of his contract with the city did not render him liable for damages to a citizen or resident unless there was privity of contract between such citizen and the individual contractor who was operating the pool for the city. The case is not controlling. Among other distinguishing features there was privity of contract between appellee and appellant in the instant case. If appellant has a valid defense on the theory of being engaged in the performance of a governmental function it does not affirmatively appear in the petition and cannot be raised on demurrer to the petition.

In the light of what has been said we need not further treat questions presented by appellant under "A" 1, 2, and 3, previously set forth.

Our attention is next directed to the second cause of action in which appellee sought to invoke the doctrine of *res ipsa loquitur.* Appellant's motion was:

"1. That paragraph 2 of the said Count II be made definite and certain by setting forth specifically wherein and in what manner the said defendant 'carelessly and negligently caused or permitted said treatment to be rendered' in a manner to cause injury."

It has been said where specific acts of negligence are proved the doctrine of *res ipsa loquitur* does not apply. (*Waddell v. Woods,* 158 Kan. 469, 471, 148 P. 2d 1016.) Appellee's theory of the second cause of action was not predicated on specific acts of negligence. His idea clearly was to file the second cause of action on the theory of *res ipsa loquitur* and to rely on it in the event he failed to establish the specific acts of negligence pleaded in the first cause of action. In order, however, to plead fully the circumstances and conditions, as far as he was able to do so, under which he submitted himself to appellant for treatment, which have been stated and need not be repeated, he made paragraphs 1, 2 and 3 of count one a part of count two. In addition thereto he expressly, among other things, stated, in substance:

The X-ray treatments and the instrumentalities used were under the sole control and supervision of appellant; the severe burns to other portions of his head, face and neck, remote from his right ear, would not have occurred if the treatment had been administered in a careful and proper manner; that he was without knowledge of the proper technique, method or manner of giving and applying X-ray treatments and relied on appellant to render them in a proper and careful manner, which appellant failed to do and that such injuries were directly and proximately caused by appellant's negligence and carelessness.

The wart or growth on his ear was not within his view as was the leg injury in the Waddell case and we think he was not obliged to attempt to describe the general physical make-up of machines or instrumentalities employed by appellant or to attempt to state, under such circumstances, what was objectively done in the manner of treatment in order to state a cause of action under *res ipsa loquitur*.

In *Starks Food Markets, Inc. v. El Dorado Refining Co.,* 156 Kan. 577, 134 P. 2d 1102, we held:

"The mere fact an accident happens or an event occurs in which injury results is not sufficient to establish liability. Negligence is never presumed but must be established by proof. *Where direct proof is lacking the circumstances may be proved, and if they are such as to leave no reasonable conclusion to be drawn other than that the defendant be at fault, they may be shown to make a prima facie case, and to warrant application of the doctrine of res ipsa loquitur."* (Our italics.) (Syl. ¶ 2.)

By the same token where knowledge of the specific negligence is lacking, a plaintiff may so state and plead the circumstances. This we think he did about as fully as reasonably might be expected.

"'It is a familiar rule of pleading that when the plaintiff has two or more distinct reasons for obtaining the relief sought, or when there is more or less uncertainty as to the grounds of recovery or as to the exigencies of proof, the petition may set forth a single claim in more than one count. The pleader may state his case in as many ways as he sees fit in separate counts in order to meet any possible phase of the evidence, and he will not be required to elect on which count he will proceed.'" (*Ondrasek v. Ondrasek*, 172 Kan. 100, Syl. ¶ 4, 238 P. 2d 535; *Kloepfer v. Chicago, Rock Island & Pacific Rld. Co.*, supra, p. 101.)

To have sustained appellant's motion would have compelled appellee to plead specific acts of negligence as to scientific matters concerning which he alleged he had no knowledge and would have precluded his right to attempt to state a cause of action under another theory, namely, the doctrine of *res ipsa loquitur*. The motion was properly overruled.

Does the second count state a cause of action under that doctrine where the injuries sustained are alleged to have resulted from negligent X-ray treatments? Appellant contends we have held the doctrine does not apply to a case of that character, citing *Waddell v. Woods*, supra. The contention is too broad. The majority of this court held the doctrine did not apply to the facts alleged in the particular petition there under scrutiny. (p. 476.)

Before considering whether there are differences in the petitions in the Waddell and the instant case it may be well to admit we recognized in the Waddell case that in a majority of cases it has been held the doctrine does not apply in a case of mere unsatisfactory results of an X-ray treatment. It must be borne in mind this is not a case based on unsatisfactory results with respect to the removal of the wart or growth on the upper part of appellee's right ear. This is a case involving severe burns to portions of appellee's head, face and neck and for the damages alleged to have resulted from the latter.

Appellee asserts the second count contains a clear statement of the circumstances and conditions, including appellant's personal examination of the wart or growth, his advice it be removed, his assumption of the duty to remove it in a proper manner and that the treatments and instrumentalities used were under appellant's sole control and supervision. The second count does so allege. Appellee further contends the second count contains a statement of every material allegation the majority believed to be lacking in the petition in the Waddell case. A comparison of the petitions leads us to conclude the contention is substantially correct.

We adhere to the statement of the rule in *Starks Food Markets, Inc. v. El Dorado Refining Co.,* supra, where it was said:

"If on trial the facts alleged were all that were shown, the trier of the fact could only indulge in conjecture as to the cause of the fire. In such case the doctrine of *res ipsa loquitur* should not be applied." (p. 583.)

It seems to us proof of the allegations in count two of the instant petition will not result in leaving the cause of the injuries open only to conjecture. We think the various allegations therein contained, together with the nature and location of the injuries for which damages are sought, are sufficient, if established on the trial, to make a *prima facie* case under the doctrine of *res ipsa loquitur.*

The orders overruling the demurrer to counts one and two are sustained.

### "COUNT I

"Comes now the plaintiff, A. P. EMRIE, and for Count I of his cause of action against the defendant, GALEN M. TICE, states:

"1. That the plaintiff and defendant are and were at all times mentioned herein residents of the State of Kansas.

"2. That the University of Kansas Medical Center, also known as Bell Memorial Hospital, is and at all times herein mentioned was a hospital located in Kansas City, Wyandotte County, Kansas, and at all times mentioned herein defendant was a doctor of medicine and a staff member of said hospital in charge of the X-ray and radium therapy department of said hospital.

"3. That on or about March 20, 1950, plaintiff was a paying patient in said hospital and at said time and place defendant assumed the obligation of rendering professional service concerning the removal of a small wart or growth on the upper part of plaintiff's right ear; that on or about March 20, 1950, defendant personally examined said wart or growth, advised plaintiff that it could be removed, and recommended that it be removed by X-ray treatment, and that the treatment of plaintiff's ear thereafter rendered was for that purpose alone; that at said time and place and more specifically on this occasion, defendant was a duly licensed and practicing physician and surgeon, a member of the faculty of the University of Kansas School of Medicine who held himself out to plaintiff and the public as an expert in the treatment of human ailments by X-ray and radium therapy, possessing skill and ability in such field superior to the skill of the ordinary practitioner in the medical profession and commensurate with that of other specialists and experts in the field of X-ray and radium therapy; that because treatment by X-ray is such a highly skilled and specialized art in a science of which plaintiff had no knowledge respecting the proper technique, methods and manner in giving and applying same, plaintiff relied upon the special and superior skill of said defendant as held out by said defendant, and submitted himself to defendant for treatment by X-ray and radium therapy for the removal of said wart or growth; that defendant then and there assumed the duty of properly and safely removing said wart or growth by X-ray and radium therapy treatments and that such treatments so rendered to plaintiff were at all times under the direction, super-

vision and control of defendant; that after defendant assumed the duty of so treating the plaintiff and did supply plaintiff with treatment by X-ray and radium therapy for the removal of said wart or growth from plaintiff's ear, plaintiff was injured in a manner hereinafter more particularly described.

"4. That said injuries arising out of the removal of said wart or growth by X-ray treatment were a direct and proximate result of defendant's negligence and carelessness in failing to exercise the high degree of care required of him in such relationship and commensurate with the standard of skill which defendant had held himself out as possessing; that defendant was careless and negligent in the following respects, to-wit:

"(1) Defendant negligently and carelessly failed to use proper care in the supervision, direction and control of the operation of said X-ray machine so that plaintiff's head, neck, scalp and face were over-exposed to the X-ray, the same being improper and unnecessary for the type of treatment required in removal of said wart or growth from plaintiff's ear.

"(2) Defendant negligently and carelessly failed to use or to provide or direct the use of proper, adequate and sufficient filter to protect the head, scalp, neck and face of the plaintiff from the X-rays.

"(3) Defendant negligently and carelessly failed to use or to provide or direct the use of proper care in shielding and protecting areas of the plaintiff's neck, face, scalp and head, the exposure of said areas being neither necessary nor essential in the X-ray treatment for the said removal of said wart or growth from plaintiff's ear.

"(4) Defendant negligently and carelessly caused, permitted or allowed the face, neck, scalp and head of plaintiff to be exposed to a current or ray excessive in strength, for a dangerous and excessive length of time.

"(5) Defendant negligently and carelessly caused, permitted or allowed the so-called target of the machine to be placed too close to the body of the plaintiff, thereby increasing the intensity of the ray beyond the point of safe use for the purpose contemplated.

"5. That as a direct and proximate result of the aforesaid negligence and carelessness of defendant, plaintiff was injured in the following particulars:

"He received a severe burn on the right side of his head, scalp, face, and neck; the burned area became an open, festered and running sore; the hair follicles on the right side of his head have been destroyed, causing a prominent and disfiguring loss of hair and permanent scar extending across the right side of his head above his ear from the forehead to a point near the hairline at the base of the head; he suffered and continues to suffer from a severe and painful rash on the right side of his head, face, and neck; his right eye has been permanently damaged and its normal function and use permanently impaired; the glands on the right side of his face and neck have been severely and permanently damaged and their normal functions permanently impaired; he suffered and continues to suffer from a loss of the sense of taste; the nerves, muscles and other tissues of his tongue and those which control same have been permanently injured and he suffers from difficulty with and a retardation of his speech; as a result of the aforesaid disfigurement and the impairment of his speech, he has developed a reluctance and timidity amounting to a complex with respect to public appearances and public speaking required of him; he has suffered and

will continue to suffer great pain and mental anguish; his ability to perform his normal and usual work has been greatly impaired and damaged; he has received treatment for the aforesaid injuries from the defendant at the University of Kansas Medical Center and from Dr. R. G. Klein, at Dodge City, Kansas, and has expended approximately $25 for care and treatment of said injuries; he is informed and believes that X-ray injuries, of the type aforesaid, are incapable of being cured and are of such a nature that additional care and treatment will be required in the future, and, while the nature of his injuries renders it impossible to foretell the extent of such future care and treatment or the cost thereof, he estimates that the cost of such future care and treatment will be approximately $250; and the injuries and conditions aforesaid are severe, permanent, and progressive, and without remedy.

* * * * * * * * * * * * * * * * *

### "COUNT II

"Comes now the plaintiff, A. P. Emrie, and for Count II of his cause of action against the defendant, Galen M. Tice, states:

"1. That he adopts each and every allegation contained in paragraphs 1, 2 and 3 of Count I hereof as fully as though said paragraphs were herein set forth.

"2. That the aforesaid X-ray treatments so rendered plaintiff and the instrumentalities used in rendering said treatments were under the sole control and supervision of defendant; that plaintiff is without knowledge of the proper technique, method or manner of giving and applying such X-ray treatments and relied upon defendant to render such treatment in a proper and careful manner; that the sole purpose of said treatment was the removal of said wart or growth from plaintiff's right ear; that said treatment was so rendered to plaintiff by defendant for said purpose after examination and diagnosis of said wart or growth by defendant; that defendant carelessly and negligently caused or permitted said treatment to be rendered in such a manner as to cause plaintiff severe burns and other injuries, hereinafter more particularly set forth, in areas remote from plaintiff's right ear, the treatment of said areas being neither essential nor appropriate to treatment required for the removal of said wart or growth by X-ray; and that X-ray treatment for the purpose aforesaid in a careful and proper manner would not have involved or resulted in injury to said areas remote from the ear.

"3. That as a direct and proximate result of the aforesaid negligence and carelessness of defendant, plaintiff was injured in the following particulars:

"He received a severe burn on the right side of his head, scalp, and neck; the burned area became an open, festered and running sore; the hair follicles on the right side of his head have been destroyed, causing a prominent and disfiguring loss of hair and permanent scar extending across the right side of his head above his ear from the forehead to a point near the hairline at the base of the head; he suffered and continues to suffer from a severe and painful rash on the right side of his head, face and neck; his right eye has been permanently damaged and its normal function and use permanently impaired; the glands on the right side of his face and neck have been severely and permanently damaged and their normal functions permanently impaired; he suffered and continues to suffer from a loss of the sense of taste; the nerves, muscles and other

tissues of his tongue and those which control same have been permanently injured and he suffers from difficulty with and a retardation of his speech; as a result of the aforesaid disfigurement and the impairment of his speech, he has developed a reluctance and timidity amounting to a complex with respect to public appearances and public speaking required of him; he has suffered and will continue to suffer great pain and mental anguish; his ability to perform his normal and usual work has been greatly impaired and damaged; he has been obliged to employ physicians to care for and treat the aforesaid injuries, and to expend money for such care and treatment and is informed and believes that he will be obliged to expend additional sums for future care and treatment; and the injuries and conditions aforesaid are severe, permanent and progressive, and without remedy."