No. 40,210

THE MISSIONARY BAPTIST STATE CONVENTION OF KANSAS, a religious corporation, as a member of the Industrial and Educational Institute of Topeka, for itself, and all others similarly situated, *Appellant*, v. THE STATE OF KANSAS; Fred Hall, Governor, Paul Shanahan, Secretary of State, Lester McCoy, McDill Boyd, Ray Evans, Walter Fees, Elizabeth Haughey, A. W. Hershberger, Willis N. Kelley, Lawrence Morgan, Oscar S. Stauffer, as members of the Board of Regents, and Fred Hall, John McCuish, Paul Wunsch, Robert Anderson and Leonard Axe, as members of the Finance Council, all of the State of Kansas, *Appellees*.

(305 P. 2d 846)

Opinion filed January 12, 1957.

*P. A. Townsend*, of Topeka, argued the cause, and was on the briefs for the appellant.

*Robert E. Hoffman*, Assistant Attorney General, argued the cause, and *John Anderson, Jr.*, Attorney General, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action brought against the state under the provisions of G. S. 1949, 75-417, to cancel and set aside a deed and to acquire title to and possession of certain real estate in Shawnee county. From an order of the trial court sustaining defendants' (appellees) demurrer to plaintiff's (appellant) petition, as amended, they appeal.

The amended petition alleged, in substance, that The Missionary Baptist State Convention of Kansas, hereafter referred to as plaintiff, was a religious corporation and a member of the Industrial and Educational Institute of Topeka, hereafter called the institute, which was incorporated March 12, 1896, and a charter was issued and filed with the secretary of state on March 14, 1896. The charter pro-

vided that the seven individuals named therein voluntarily associate themselves together for the purpose of forming a corporation under the laws of Kansas; that the corporation was to be known as the Industrial and Educational Institute of Topeka, and the purpose for which it was formed was to promote the spiritual, physical, industrial, social and moral benefit of the colored people of Topeka and vicinity, or as more succinctly stated by the corporate seal, "An Academy Trades and Agricultural Schools for Negro Youth." Its business was to be transacted in Topeka, and the term for which the corporation was to exist was forever. The number of trustees of the corporation was to be seven, as named therein. The charter contained no further provisions. The institute acquired title to approximately 110 acres of land upon which a school was presumably operated from December, 1903 to 1955, which was the date of the first deed of property to the institute.

The petition further alleged that plaintiff became a member of the institute in the year 1901, and in 1902 it became the owner and holder of one-half of the shares of stock and one-half of the total assets of the institute; that in 1907, the state began aiding it by annual appropriations, and in 1910 the institute deeded all the real estate to the state in consideration for the support it had received, and to further the purpose of the institute by making it a state institution. This deed contained a clause providing that if the property "shall at any time not be used exclusively for the industrial and educational training and development of negro youth," it was to revert to the institute, its successors or assigns. This deed was made a part of plaintiff's petition and was dated September 30, 1910, and was signed by the vice president and secretary of the institute, with the corporate seal affixed. The authority recited in the acknowledgment was that of the board of trustees. Plaintiff alleged this deed was approved and ratified by its organization at its annual meeting October 6, 1910.

In the special session of 1923, the legislature in passing an act, Ch. 3, Sec. 3 (R. S. 1923, 76-902), making an appropriation for the institute, provided that before the appropriation become available, a deed of general warranty be executed and delivered to the secretary of state conveying to the state an absolute and unconditional title in fee simple to all the real estate used by the institution. The act became effective August 15, 1923. Plaintiff alleged, August 18, 1923, that the board of trustees of the institute held a meeting wherein the board voted to execute and deliver another deed of

conveyance to the defendant state, conveying whatever title the institute had; that neither plaintiff nor other shareholders of the corporate stock had any knowledge of the action of the trustees. A copy of this deed was attached to the petition which disclosed it was signed by the president and secretary of the institute, and carried the corporate seal. The deed contained a recital that the president and secretary were authorized to sign it. Attached to the petition was an exhibit which was an extract of the meeting of the board of trustees held August 18, 1923, and disclosed the board unanimously voted that the corporation execute and deliver a deed of conveyance to the state all right, title and interest of whatever kind or character the corporation might have in the property which was conveyed by it to the state by deed, dated September 30, 1910. Plaintiff alleged the action of the board was never presented to the stockholders nor the plaintiff, and that the same was unknown to it and, by reason thereof, the deed dated August 18, 1923 was void, and inasmuch as the legislature in the 1955 session (Laws 1955, Ch. 21, § 10), ordered the school closed, under the deed of 1910 the property reverted to the institute.

It was further alleged that this conveyance was contrary to the charter and bylaws of the institute. The bylaws were not attached as it was alleged they were not available. A correctional deed, dated September 19, 1923, was attached to plaintiff's petition, conveying the same property. The first of the two deeds was filed of record August 22, 1923, and the correctional deed, July 15, 1924.

Plaintiff alleged that the two deeds of 1923, upon which the defendants claim title, were void for the reason that (1) the charter and bylaws of the institute gave no authority to the trustees to sell or dispose of the corporate property; (2) that the action of the trustees was not approved by the shareholders of the institution, or the plaintiff as owner of fifty percent of the stock; (3) that the action of the trustees constitued a violation of the charter, and (4) that the trustees deeded the property which the corporation had previously reserved.

Plaintiff contends the trial court erred in sustaining defendants' demurrer to its petition on the ground it had no legal capacity to sue, and that the petition failed to state facts sufficient to constitute a cause of action against the state. The basis of plaintiff's claim is that it was a stockholder of the corporation and that the action of the board of trustees in executing the deeds of 1923 was contrary to the charter and bylaws of the institute, and therefore void. It

need not be debated but that a demurrer admits the well pleaded allegations of the pleading attacked for the purpose of determining the sufficiency of the pleading. While a pleading is usually to be liberally construed in favor of the pleader, the whole of it must be considered together, and where one asserts a cause of action based, in part, upon exhibits the terms of which are contradictory to and at variance with allegations of the petition, the recitals to be found in the exhibits are controlling and determinative of the question whether the petition states a cause of action. (*Galleher v. City of Wichita,* 179 Kan. 513, 519, 296 P. 2d 1062, and cases therein cited; *State, ex rel., v. Hedrick,* 178 Kan. 135, 139, 283 P. 2d 437; *Wood v. Stewart,* 158 Kan. 729, 150 P. 2d 331.) Applying the rule stated, does the petition disclose that plaintiff had legal capacity to sue? The charter upon which plaintiff relied was granted March 14, 1896. G. S. 1897, Ch. 66, Art. 1, Sec. 5, provided that the charter must contain the amount of capital stock, *if any.* Since the charter did not provide for issuance of stock, there could be no stockholders, and plaintiff's allegation that it was a stockholder and the owner of one-half of the stock is a mere conclusion and contrary to the provisions of the charter and the statute under which it was granted. Consequently, the plaintiff had no legal capacity to maintain the action.

The charter provided for seven trustees who were the incorporators. Section 57 of the mentioned statute provides that the trustees named in the charter may make all necessary bylaws and perform any and all necessary acts to carry into effect the objects of the corporation. Section 61 provides that any such corporation, by a vote of three-fourths of the directors, may apply the property to further the purposes of the organization. Under the charter granted, it is clear that the property vested in the trustees of the corporation with statutory authority to convey it upon a three-fourths vote. The allegation in the petition that the execution of the deeds of 1923 was contrary to the charter and bylaws for the reason it was not first submitted to the stockholders, was a conclusion completely lacking in factual support and at variance with the statutes and charter.

The order of the trial court sustaining defendants' demurrer to plaintiff's petition, as amended, is affirmed.

It is so ordered.

FATZER and HALL, JJ., not participating.