No. 41,298

W. W. Kitchen, *Appellee*, v. Harry Smith, Jr., *Appellant*.

(334 P. 2d 413)

*Jay W. Scovel,* of Independence, argued the cause, and *Thomas R. Scovel* and *Robert K. Scovel,* both of Independence, were with him on the brief for appellant.

*Rex A. Lafferty,* of Fredonia, argued the cause, and *Alex Hotchkiss,* of Lyndon, was with him on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from an order of the trial court overruling the defendant's demurrer to the amended petition of the plaintiff.

The sole question presented is whether the amended petition states a cause of action under the doctrine of *res ipsa loquitur.*

The amended petition alleges that plaintiff (appellee) was the owner of a section of grassland which was used for the pasturing of cattle and making hay; that on or about the 8th day of September, 1956, the plaintiff sold all of the standing prairie grass on said land to H. W. Smith. Thereafter, Smith employed the defendant (appellant) as an independent contractor to cut and bale the standing prairie grass. On or about September 17, 1956, plaintiff sustained fire damage to said real estate which was alleged to have been proximately caused by the negligence of the defendant.

The amended petition then specifically alleges:

"6. That on or about September 17, 1956, Bert Hall was operating a hay baler unit on said real estate, which hay baler unit belonged to said defendant. That during all of the times herein mentioned said Bert Hall was the duly appointed agent, servant, and employee of the defendant and acting·within the scope of his duties and authority as such.

"7. That said hay baler unit consisted of a hay baler with gasoline powered motor located thereon and was drawn or propelled by a tractor. That some of the standing prairie grass on said real estate had been mowed and raked for baling. That the defendant, through his said agent, had been operating said hay baler unit baling such mowed and raked hay for approximately ____ hours on said day. That at about 11 a. m. of said day, while so operating the same, *said hay baler unit caused matter of combustible quality to come into contact with such prairie grass and ignite the same and start a fire.* That said fire spread rapidly and burned over approximately 250 acres before it could be brought under control and extinguished, causing damage to plaintiff as hereinafter set out. *That plaintiff does not know and cannot more specifically set out the exact type and kind of said matter of combustible quality.*

"8. That plaintiff had no connection with such hay baler unit or control of the same and was not on or near said land at the time of starting said fire and did not learn of the fire until after it had occurred. *That there were no lights, flames, or other matters of combustible quality at or about said location where said fire started, except in connection with said hay baler unit.* That no other machinery or person or persons were at or near the location where said fire started, except said hay baler unit so operated by the defendant through his said agent, servant and employee. That at all times herein mentioned said hay baler unit was under the sole and exclusive possession, management and control of the defendant through his agent, servant and employee, as aforesaid.

"9. That plaintiff does not know and therefore does not attempt to allege or describe specific acts of negligence of which the defendant may have been guilty and that may have been the proximate cause of the damage to plaintiff as herein described, but alleges and says that *matters of combustible quality coming in contact with the prairie grass igniting the same and starting the fire with the resulting damage to plaintiff was an occurrence which could not have taken place except for some act or acts of negligence of defendant* through his said agent, servant and employee *in the management, control and operation of said hay baler unit.* That said damages to plaintiff were proximately caused by and the direct result of some act or acts of negligence while in the exclusive possession, management and control of said hay baler unit.

"10. That as the direct result of said fire said real estate was damaged in that the soil thereof was injured by burning, its growing quality was impaired, the grass roots therein were damaged and destroyed, and part of the fence was destroyed. That the fair and reasonable value of said land immediately before said fire was $51,200.00 and immediately after said fire it was $47,450.00 and plaintiff has been damaged thereby in the sum of $3,750.00." (Emphasis added.)

The appellant isolates the following language in paragraph 7 of the amended petition which reads:

". . . matter of combustible quality to come into contact with such prairie grass and ignite the same and start a fire."

Resort is made to the dictionary definition of "combustible" which is defined as "Capable of undergoing combustion; apt to catch fire; inflammable." (Webster's New International Dictionary, Second Edition.) In the same work, the word "combustion" is defined as "Act or instance of burning." "Inflammable" is defined as "Capable of being easily set on fire; easily enkindled; combustible." The argument is then advanced that a few of the many different items that could be classified as combustible are paper, cotton, excelsior, gas, oil, straw, hay, sawdust, shavings, gasoline, kerosene, chaff, etc., and that none of these items coming in contact with the prairie hay, not being in a state of combustion themselves, would ignite or cause a fire. Hence, by the allegations in the amended petition, plaintiff

precludes any finding that the defendant caused this fire. Appellant states in his brief:

". . . Had he alleged that sparks from the tractor caused the hay to ignite, he would have then come within the rule. But, the plaintiff's petition has not alleged anything as the cause of the fire that could be traced to the defendant or the defendant's equipment."

*Emigh v. Andrews*, 164 Kan. 732, 191 P. 2d 901, is cited as authority for appellant's position and he quotes Syllabi 3, 4 and 5 as follows:

"3. The established rule is that liability cannot result from an inference upon an inference or from presumption upon presumption.

"4. An inference arises only from an established foundation fact. The inference cannot supply the foundation fact from which it arises.

"5. When all attending circumstances alleged in a petition to recover damages resulting from destruction of a wheat crop by fire are considered and the inference of defendant's negligence must rest solely on a presumption relative to the cause of the fire the doctrine of *res ipsa loquitur* should not be applied."

In the foregoing case the petition alleged:

". . . while said truck was operated by defendant as aforesaid in hauling wheat, a fire was started in the stubble on the above described land; *that said fire started at a point on said land over which said truck had passed,* immediately after said truck had passed over said point; that no other persons or vehicles were near the point on said land where said fire started at the time the fire started or during the morning . . ." (Emphasis added.)

and in the next paragraph the petition further alleged:

". . . that when said trucks are maintained in a proper condition, and are operated in a careful manner *and where the occupants of said vehicles conduct themselves in a careful manner,* fires do not result from such operation." (Emphasis added.) (p. 733.)

The foregoing allegations failed to allege that the thing or instrumentality, namely the truck, caused the damage. It was a matter of conjecture whether the fire was caused by the instrumentality or whether it was caused by a cigarette butt or match thrown from the truck by its driver, or whether the fire resulted from some other cause. As a result of these allegations the court held the petition did not allege that the truck started the fire, or that it emitted sparks, but at best alleged facts which raised only a presumption that the truck caused the damage. The substance of the court's holding was that until the initial or fundamental fact, the cause of the injury, was known, an inference of defendant's negligence did not arise therefrom which the defendant was required to rebut, and the doctrine of *res ipsa loquitur* was not applicable. In other words, so long

as the thing which occasioned the injury is unknown it cannot be said to speak for itself and thereby raise an inference of negligence.

The foregoing case is recognized as good law where it has application. The omission in the *Emigh* case is supplied in the amended petition presently before the court since it specifically alleged that "said *hay baler unit caused* matter of combustible quality to come into contact with such prairie grass and ignite the same and start *a fire.*" (Emphasis added.) Our question is whether the additional allegations call for application of the *Emigh* rule.

Insofar as the record before the court discloses, the amended petition of the plaintiff was not previously attacked and is entitled to a liberal construction on demurrer. The rules concerning the construction of a petition under these circumstances have been well stated in the case of *In re Estate of Dikeman,* 178 Kan. 188, 284 P. 2d 622, where the court said:

"Having concluded the petition comes under the rule of liberal construction it is well, at this point, to note that notwithstanding such pleading is subject to and must be construed in the light of other well-established rules. *One is that in construing the sufficiency of any pleading all of the allegations thereof are to be considered together, and it is not proper to segregate allegations and determine their sufficiency without regard to the context of the whole pleading (Fyne v. Emmett,* 171 Kan. 383, 233 P. 2d 496; *Emrie v. Tice,* 174 Kan. 739, 740, 258 P. 2d 332). Another is that when the whole of the pleadings are considered together and where any two allegations of the same party are inconsistent with each other the allegation most unfavorable to such party will be deemed to override the other *(Wood v. Stewart,* 158 Kan. 729, 732, 733, 150 P. 2d 331, and cases there cited; also 71 C. J. S., Pleading, 139 § 54). Still others are that the fact a pleading is to be liberally construed does not mean that its plain averments are to be modified or that the pleader is not bound by them *(Burks v. Aldridge,* 154 Kan. 731, 733, 121 P. 2d 276); or that its allegations are to be extended to the point where the rule requires an obviously erroneous construction of their meaning *(Hidalgo v. Kansas Milling Co.,* 176 Kan. 221, 223, 269 P. 2d 1029); or that all its allegations are not to be considered in determining whether the pleader has set forth facts which precluded his recovery *(Jones v. Jones,* 161 Kan. 284, 293, 167 P. 2d 634; 41 Am. Jur., 353 § 88)." (Emphasis added.) (pp. 194, 195.)

Recent decisions confirming the rule that a single allegation in the petition cannot be isolated in considering whether the petition is sufficient to state a cause of action are *Cessna v. Coffeyville Racing Association,* 179 Kan. 766, 298 P. 2d 265; *McCollister v. City of Wichita,* 180 Kan. 401, 304 P. 2d 543; *Missionary Baptist State Convention of Kansas v. State,* 180 Kan. 501, 305 P. 2d 846; *Van Royen v. Osborn,* 181 Kan. 39, 309 P. 2d 630; *Hickert v. Wright,* 182 Kan.

100, 319 P. 2d 152; and *Acton Manufacturing Co. v. Myers,* 182 Kan. 364, 320 P. 2d 840.

With the rules governing construction of the amended petition established, we turn to a consideration of the meaning of the isolated portion of the amended petition when viewed in the light of other allegations in the amended petition.

In paragraph 8 the portion reading: "That there were no *lights, flames, or other matters of combustible quality* at or about said location where said fire started, except in connection with said hay baler unit" (Emphasis added) indicates that the pleader used the terms "lights" and "flames" as synonymous with the expression "matters of combustible quality." This indicates the sense in which such language was used. It shows an intention to use an expression which is all-inclusive of matters which have an igniting characteristic—capable of igniting prairie grass or setting it on fire, such as results from lights or flames. That this meaning was attached to the expression by the appellee is further disclosed by the alleged fact in paragraph 9 that:

". . . *matters of combustible quality* coming in contact with the prairie grass *igniting* the same and *starting the fire* with the resulting damage to plaintiff was an occurrence which could not have taken place except for some act or acts of negligence of defendant . . ." (Emphasis added.)

Had the appellee used the expression "said hay baler unit caused matter in a state of combustion, or capable of causing combustion, to come into contact with such prairie grass and ignite the same and start a fire," the literal meaning of the words used would have been clear. Yet from all of the allegations it is clear that this was the meaning ascribed by appellee when he used the words "matter of combustible quality."

In giving effect to the intended meaning of the expression used by the appellee it is unnecessary to resort to a strained construction of the words used. In speaking of *matter* and *fire* we are concerned with phenomena of nature ordinarily studied under the subject of physics. In the law of physics "matter" is "Whatever occupies space; that which is conceived to constitute the body of the outward or physical universe and, with energy, to form the basis of objective phenomena . . ." (Webster's New International Dictionary, Second Edition.) Matter exists in three states or phases: Solid, liquid and gas. Matter in the process of combustion undergoes chemical change and usually changes from one state to another,

such as from a solid to a gaseous state or to a combination of one or more of them. In the process it gives off energy in the form of heat. Substances burn at different temperatures and may or may not cause substances with which they come into contact to undergo combustion depending on their nature and the degree and intensity of the heat.

It is thus apparent that the word "matter" in the law of physics is an all-inclusive word having reference to each and every state in which it may be found to exist, including matter in a state of change or combustion. Appellee's expression "matter of combustible quality" refers to the kind of matter—capable of undergoing combustion—without indicating its state, except insofar as the word "matter" is all-inclusive of matter in each and every state in which it is found to exist. Thus, appellee's expression is inclusive of matter capable of combustion, in a state of combustion or capable of causing combustion.

The difficulty frequently encountered by an attorney pleading his client's cause of action under the doctrine of *res ipsa loquitur* is illustrated by this case. Here counsel was confronted with the task of using a general all-inclusive expression to incorporate the many variables, such as fire caused from a hot exhaust pipe, a spark from a dangling electric wire, burning carbon from inside a motor emitted through the exhaust pipe (commonly known as sparks) or leaking gasoline ignited by heat from the motor, among the many possible causes of fire originating from the instrumentality. Courts cannot be hypertechnical in exacting accuracy of expression in a pleading for to do so would seriously prejudice the rights of individuals whom the law is designed to protect. Substantial justice is accomplished where the intended meaning of an expression is clear from the manner in which it is used when all of the allegations of a petition are considered together. This is not inconsistent with other rules in the *Dikeman* case, supra, which concern the construction of a petition to determine its sufficiency.

What has been said simply means, and we hold, that where the intended meaning of an expression used in the allegations of a petition is clear, considering all of the allegations together, such clear meaning is not the product of an inference or a presumption and the rule applied in *Emigh v. Andrews,* supra, has no application.

The decision herein need not rest solely upon the foregoing considerations.

The difficulty courts often encounter is the application of the doc-

trine of *res ipsa loquitur* to the situation disclosed by the facts and circumstances alleged in the petition. This was recognized in *Lamb v. Hartford Accident & Indemnity Co.*, 180 Kan. 157, 161, 300 P. 2d 387.

This court has been prone to write a chapter on the doctrine of *res ipsa loquitur* each time such case has been before it, and as a result has generously treated the doctrine in this jurisdiction. We shall not, therefore, further pursue the subject as to allegations concerning which no issues are presented by the appellant, except to refer the reader to the recent case of *Worden v. Union Gas System*, 182 Kan. 686, 324 P. 2d 501, wherein both court and dissenting opinions accumulate many of our cases and discuss them.

In *Lamb v. Hartford Accident & Indemnity Co.*, supra, it was stated that when a thing which causes injury without fault of the injured person is shown to be under the exclusive management and control of the defendant or his servants, and the injury is such as in the ordinary course of events does not occur if the one having such management or control uses proper care, it asserts reasonable evidence in the absence of explanation, that the injury arose from the defendant's lack of due care. The doctrine is justified from a consideration that the defendant in control of the instrumentality has it within his power to produce evidence of the cause of the injury, while the plaintiff is without such knowledge and must therefore rely upon proof of the circumstances.

Viewing the amended petition in the instant case in the light of stated requirements for application of the doctrine, it is clear that it is sufficient to establish a *prima facie* case based on *res ipsa loquitur* without stating in general allegations, here under attack, the means by which the baler unit caused the fire. In this respect it was sufficient to allege that the *hay baler unit started the fire* which damaged the plaintiff in the particulars alleged. Other allegations in the amended petition fully set out the attendant circumstances foreclosing any other possibility of the fire. By alleging more than was necessary to state a cause of action, the allegations concerning which the appellant complains may be treated as surplusage and disregarded. (*Topinka v. American Eagle Fire Ins. Co.*, 167 Kan. 181, 205 P. 2d 991; and *Young v. Railway Co.*, 82 Kan. 332, 108 Pac. 99.)

An argument similar to that of the appellant was advanced in *Primm v. Kansas Power & Light Co.*, 173 Kan. 443, 249 P. 2d 647, where it was stated:

". . . Appellee says further that if the explosion resulted from gas, there would have been no explosion without the gas being ignited, and the court is going to have to assume there was an ignition and what caused it and that this may not be done. . . ." (p. 450.)

The court answered this argument by saying:

". . . It must be apparent that if plaintiffs knew what ignited the gas they would have been in a position to allege specific acts of negligence and the doctrine would then not be applicable." (p. 450.)

In the amended petition appellee alleged that the fire which caused injury to his land was not due to any voluntary action or contribution on his part; that the baler unit which started the fire and caused injury to his land was under the exclusive management and control of the defendant or his servants; and that the fire which caused injury to his land was of the kind which in the ordinary course of events would not have occurred in the absence of negligence on the part of the defendant or his servants.

It follows that the demurrer of the defendant to the amended petition of the plaintiff was properly overruled. The judgment of the trial court is affirmed.